# Richmond.

## George L. Doughty, Administrator of Joseph Hargis, Deceased, v. Harvey Thornton and Elizabeth Thornton.

October 30, 1928.

Holt, J., having taken his seat on the Supreme Court of Appeals did not sit in this case.

786

The opinion states the case.

*George L. Doughty* and *Benjamin T. Gunter*, for the plaintiff in error.

*J. Brooks Mapp*, for the defendants in error.

McLemore, J., delivered the opinion of the court.

Writ of error to a judgment of the Circuit Court of Accomac county rendered in favor of defendants in error, against the estate of Joseph Hargis, deceased.

The defendants in error, who will hereafter be referred to as plaintiffs, proceeded by motion in the circuit court to establish a debt against the estate of the said Joseph Hargis, deceased, which resulted in a verdict and judgment for $800.00.

The notice of motion is in the following words and figures, viz:

"To George L. Doughty, administrator of Joseph Hargis, deceased:

"You are hereby notified that we shall on the 6th day of December, 1926, that being the first day of the term, move the Circuit Court for the county of Accomac, Virginia, for a judgment against you, as administrator, for the sum of twelve hundred and two dollars ($1,202.00), with interest thereon from December 6, 1926, until paid and costs; the same being due to us by you, as administrator of the estate of Joseph Hargis, deceased, for boarding, waiting on and care of said Joseph Hargis during the three years, three months and seventeen days prior to his death, at $1.00 per day. The indebtedness covered by this suit is not taxable under the statute law of the State of Virginia.

"Given under our hands this the 22nd day of November, 1926.

"HARVEY THORNTON and<br>
"ELIZABETH THORNTON,<br>
"By Counsel."

Joseph Hargis, a resident of Wachapreague, in the county of Accomac, was twice married, and his second wife, who was the widow Thornton at the time of their marriage, had one boy, Harvey Thornton, then about twelve years of age. Hargis had three living children, the issue of his first marriage, who were living apart from him.

At the time of the Hargis-Thornton marriage young Harvey Thornton came with his mother, now Mrs. Hargis, into the home where he remained until grown. He was practically accepted as a member of the family, and the relations between him and his stepfather were, and remained, cordial up to the death of Hargis.

Mrs. Hargis, the mother of Harvey Thornton, predeceased her husband something over three years, her

husband being about seventy years of age at the time of her death.

Several years prior to the death of his mother, Harvey Thornton had married and at first took his wife to the Hargis home where they remained for about six months, during which time the two families shared equally the "grub bill." The Thorntons then left the stepfather's home and lived to themselves for a year, during which period a child was born to the union; they again went back to the Hargis residence where they remained for a year or more, sharing equally the living expenses of the home. At the expiration of this year they left the home again, moving into their own home, which adjoined that of Hargis where they remained until the death of Mrs. Hargis, Harvey Thornton's mother.

Immediately following the death of Mrs. Hargis, her husband came over to the Thornton home and suggested that they leave their place and come and live with him and look after him in his declining years, he being then about seventy years of age, and as plaintiffs contend said to them that "they would be well paid for their trouble."

The plaintiffs, Harvey and Elizabeth Thornton, his wife, with their children, gave up their home and came to the Hargis residence where they lived until his death, and looked after Mr. Hargis for three years, three months and seventeen days, giving him that attention which his age and physical condition required.

That the plaintiffs were thoughtful, considerate and attentive to his requirements is conceded, and the entire responsibility of looking after, and ministering to, him during these years was upon them.

This motion was brought after his death to recover for the services rendered by Thornton and his wife

during the three years and three months. It does not set an express contract, but rather ask for a recovery upon the *quantum merit* doctrine.

The evidence which is certified in narrative form attempts to establish a direct promise to pay the plaintiffs for the services rendered. This promise was testified to by Harvey and Elizabeth Thornton, but no other of the witnesses heard the agreement and the contention was made and sustained by the learned trial judge that under section 6209 of the Virginia Code, no verdict can be sustained against the decedent unless the evidence of the plaintiffs is corroborated by independent testimony.

The court gave two instruction in the case, both of which were excepted to by plaintiffs. They read as follows:

"1. The court instructs the jury:

"That as between persons standing to each other in the relation of husband and wife, parent and child, grandparents, brothers, stepchildren, and other near relations, no action can be maintained for such services in the absence of an express contract or engagement to pay for them.

"2. The court instructs the jury:

"That not only must there be an express promise shown, but no verdict can be based upon the uncorroborated testimony of the plaintiffs in this case."

A verdict and judgment thereon was entered in favor of the plaintiffs for $800.00 and defendant is here asking that the judgment be set aside as contrary to the law and the evidence.

In considering this question we have to determine whether or not the alleged promise to compensate the plaintiffs has been proved by competent testimony, *i. e.*, has the plaintiffs' statements in connection with the

promise been corroborated as required by section 6209 of the Virginia Code?

Harvey Thornton testified that Hargis stated to him "that they would be well paid for taking care of him when he died." Elizabeth Thornton's recollection is that he said: "If you will come and look out for me, the ones that look out for me will be paid." No other person heard this conversation, and while there is abundant evidence that the plaintiffs left their home and lived with, and cared for the decedent until his death, it is doubtful if this fact can be said to corroborate the express promise as set out above to pay for the service. This act on their part was equally consistent with their change of domicile under an express promise not to receive any compensation. It does not, we think, tend of its own strength and independently to support the essential position taken by the plaintiffs, namely: That Hargis promised to pay them for their services if they would come to his home and look after him during his remaining years. *Robertson* v. *Atlantic Coast Realty Co.*, 129 Va. 499, 106 S. E. 521; *Burton's Executor* v. *Manson*, 142 Va. 500, 129 S. E. 356; *Varner's Executor* v. *White*, 149 Va. 177, 140 S. E. 128.

Plaintiffs contend that no express contract is necessary to be shown in this case, as a verdict can well be sustained on an implied promise to pay for the services rendered, even though the trial court instructed the jury otherwise. It will be noticed that instruction No. 1 told the jury that a stepchild could only recover upon establishing an express promise to pay.

This position brings us to a consideration of the question as to when a stepchild is precluded from recovering for services rendered to his stepfather upon an implied promise to pay.

■ The authorities both in Virginia and in other jurisdictions are in accord in holding that recovery cannot be had upon *an implied promise*, where the parties stand *in loco parentis*. *Jackson* v. *Jackson*, 96 Va. 170, 31 S. E. 78.

■ Whether a stepchild bears such a relation to his stepfather as to place the latter *in loco parentis*, is dependent upon the facts of each particular case.

■ "A stepfather does not merely, by reason of the relation, stand *in loco parentis* to his stepchild, but where the stepfather receives the stepchild into his family and treats it as a member thereof, he stands in the place of the natural parent, and the reciprocal rights, duties, and obligations of parent and child continue, so long as such relation continues." 29 Cyc. 1667; 20 Ruling Case Law, page 594.

■ In this case Harvey Thornton came into the home of his stepfather at the age of twelve years, and from that time until his majority, or marriage, lived in the home of the stepfather and was treated as a member of the family. Mr. Hargis stood to him in the relation and place of a natural parent. He assumed responsibility for his rearing, and was in turn entitled to the services due by a child to the parent.

There was of course no actual kinship and the marriage of Thornton seems to have been considered by both parties as terminating the parental relation.

Thereafter the two families dealt with each other upon a business basis, and upon equal terms, and when Thornton's mother died, some year or so after his marriage, the last tie of affinity was then broken. Neither party was under any obligation to the other, each occupying his own home and pursuing his own course.

Such were the existing circumstances and conditions when the decedent Hargis induced the plaintiffs to

leave their home and come and live with him, where they remained till his death. It seems quite clear that while the Thorntons came back to decedent's home the last time, doubtless because of the relationship that had previously existed, they did so not because of a filial duty, but as the result of a business proposition. They owed him no legal duty.

Stepchildren, as such, are not within the letter or the reason of the law that fixes mutual obligations upon parent and child or other near relatives, and therefore no obligations are created between the step-father and the stepchild beyond such as flow from the acts of the stepfather during the dependency of the child. *Coakley's Case*, 216 Mass. 71, 102 N. E. 930, Ann. Cas. 1915a, 867; 17 Amer. & Eng. Encyc. of Law, (1st ed.), pages 343-344 and note.

Whether the express promise testified to by plaintiffs was corroborated by independent evidence as required by section 6209 of the Code of Virginia as interpreted by the recent decisions of this State, notably, *Varner's Executor* v. *White, supra,* is, we think, not decisive of the plaintiff's rights under the facts in this case. It is not essential for the plaintiffs to recover, that they must prove an express promise to pay a stipulated amount. Certainly not as to Elizabeth Thornton who bore no relation to Hargis other than that of a friend, and just as truly may the same be said with respect to Harvey Thornton, who for years had been the head of his own family, receiving no aid from Hargis, nor hope of any, for it may be noted in passing that decedent had three children living at the time of his death, one in the town and two in the county in which the town is located, none of whom appear from the record to have concerned themselves about their father's welfare.

█ The claim of the plaintiffs was for "boarding, waiting on and care of Hargis for three years, three months and seventeen days," at $1.00 per day—$1,202.00. The jury returned a verdict in favor of the plaintiffs for $800.00 which was approved by the trial court.

Under the instructions of the court it may be argued that the jury were not authorized to return a verdict in favor of the plaintiffs, but as they might properly have been instructed on the theory of an implied promise to pay for the services rendered, and as they have returned a verdict as above indicated on the theory that plaintiffs were entitled to that amount of compensation, we conclude in the language of Crump, P., in *Harris* v. *Sparrow*, 146 Va. 747, 754, 132 S. E. 694, 697, where it is said:

"The jury having found for the plaintiff and the learned judge of the trial court who heard and observed the witnesses having overruled the motion for a new trial, we do not find from the evidence that the complainant's case is so without support that this court would be justified in overruling the decision of the trial court upon the motion to set aside the verdict."

*Judgment affirmed.*