216 Va. 867 (1976)
T 
v.
T
Record No. 750537.
Supreme Court of Virginia.
April 23, 1976.
Marshall R. Williams, for appellant.
No brief or argument for appellee.
Case submitted on brief for appellant.
Present, All the Justices.
1. Before marriage, husband had promised to treat pregnant wife's child by another as if it were his own, thereby agreeing to assume the child support obligation of a biological father. Marriage ensued and husband carried out obligation under contract during more than four years of marriage. Express oral contract for support of child has been established.
2. Contract within ambit of statute of frauds is not void ab initio but cannot be enforced. Statute is not enforced when to do so would cause a fraud and a wrong to be perpetrated. Under proper conditions equity will avoid the statute and enforce an oral agreement. Ordinarily marriage is not such part performance as will take a case out of the statute. But here wife abandoned her plans for employment, and for disposition by adoption of her expected baby, and there was substantial performance by both husband and wife under the agreement for more than four years.
3. To establish equitable estoppel it is not necessary to show actual fraud, but only that person to be estopped has misled another to his prejudice or that the innocent party acted in reliance upon the conduct or misstatements by the person to be estopped. Under circumstances, husband is estopped from pleading the statute of frauds.
Appeal from a decree of the Circuit Court of Nelson County. Hon. Robert C. Goad, judge presiding.
COCHRAN
COCHRAN, J., delivered the opinion of the court.
In this divorce case the novel question for our determination on appeal is whether the former husband, who knew, when he married his wife, that she was pregnant by another, has a continuing obligation, surviving the divorce, to support the child born during their marriage.
The Juvenile and Domestic Relations Court of Nelson County held that the husband was liable for support of the child, and ordered him to make payments as specified. Upon appeal to the trial court, the support proceeding was consolidated with the divorce suit pending therein. The trial court granted the wife a divorce a vinculo matrimonii from the husband on the ground of desertion but, by order entered January 22, 1975, from which the wife has appealed, relieved the husband of any duty to support the child.
 The facts are not in dispute. Late in the year 1968, the wife, who was then single, became pregnant. She made plans to move to another state, have her baby, and then put the child up for adoption. To this end she obtained employment in New York City as a nurse. With full knowledge of her pregnancy the husband promised her that if she would forego her plans and marry him, he would care for her child after it was born "as if it were his own". The wife did not go to New York and married her husband on December 16, 1968.
It was stipulated in the trial court that the husband was not the biological father of the wife's child, a girl born June 16, 1969, in Portsmouth Naval Hospital. With the husband's approval, however, the hospital named him as the father on the birth certificate. He also had the child listed as a dependent for purposes of receiving additional pay and allowances from his employer, the United States Navy, which treated her as his dependent. When the wife's mother confronted him with the fact that he could not be the child's father, the husband made firm protestations to her that he was the father.
For more than four years the husband permitted the child to take and use his name, and he held himself out to the public as her father. She was always listed as a dependent on the couple's tax returns. Prior to the husband's desertion and abandonment of his wife on August 10, 1973, there is no evidence that he ever denied being the father of the little girl.
The ruling of the trial court, as explicated in its memorandum opinion, was based on the fact that the husband was not the biological father of the child because, at the time of her conception, he was in *869 the Navy overseas and could not possibly have had access to the mother. The court noted that the common law rule excluding testimony by either spouse as to non-access, to prove that a child born during a marriage is illegitimate, has been abrogated in Virginia. Code || 20-82 and 20-88.29 (Repl. Vol. 1975), and | 8-287 (Repl. Vol. 1957). The court found from the stipulation and testimony heard ore tenus that the presumption of the legitimacy of the child born during the marriage was fully rebutted and overcome, as permitted by Gibson Gibson, 207 Va. 821, 153 S.E.2d 189 (1967), and Smith Perry, Adm'r, and Als., 80 Va. 563 (1885). Since the child was not the husband's natural or legally adopted child he had no statutory duty to support her. Absent such statutory duty, the court concluded that the husband must be relieved from making child support payments.
The wife does not dispute the general rule that a husband is not liable, merely because of his status as husband, for the support of his wife's illegitimate child born before or after marriage. Annot., 90 A.L.R.2d 584, 585 (1963). She maintains, however, that her former husband is liable for child support in this case because of an express oral contract, estoppel, common law adoption, and the husband's standing in loco parentis as to the child, four theories which have been recognized in similar cases in other jurisdictions. If any one of these theories is applicable, of course, the order of the trial court must be reversed.
In Clevenger Clevenger, 189 Cal.App.2d 658, 11 Cal.Rptr. 707, 90 A.L.R.2d 569 (1961), on which the wife chiefly relies, the California court approved in principle the imposition of liability upon a husband for support of his wife's illegitimate child, born during the marriage, where the facts establish either an express agreement for the maintenance of the child or an estoppel of the husband to deny that he is the father. Custody and control of the child and the right to its earnings would constitute sufficient consideration to the husband to support the contract theory. Recognizing that to hold the husband to a contract there must be an express agreement and partial performance thereof, the court found that there was insufficient evidence in the record to establish the agreement. The court also found the estoppel theory inapplicable because equitable estoppel in such a case can run only in favor of the child, and there was insufficient evidence that any misrepresentation had been made by the husband to the child, who was eleven years of age when the divorce proceeding was initiated. Nevertheless, the case was remanded for a new trial, thereby affording *870 the divorced wife another opportunity to establish liability for child support under the express contract or estoppel theories.
In Spellens Spellens, 49 Cal.2d 210, 317 P.2d 613 (1957), the court held that the husband was not liable for support of his wife's children by her first husband in the absence of an agreement, adoption or some other arrangement, thus recognizing the contract theory for child support in such cases. See also Taylor Taylor, 279 So.2d 364 (Fla. App. 1973), where the Florida court held that a man has no legal duty to provide support for a minor child who is neither his natural nor adopted child and for whose care and support he has not contracted.
A recent case, factually similar to the present case, but not cited by the wife, is L L , 497 S.W.2d 840 (Mo. 1973). There, the couple met and married while the husband was in the Navy. The husband knew when he married her that his wife was several months pregnant by another man. The wife testified that at the time of their marriage her husband promised that "he would recognize the child as his", and that before and after the marriage he promised that "he would treat the child as his". The husband admitted having made these promises. When the baby was born, the husband permitted his name to be recorded on the birth certificate as her father, and he introduced the child to others as his daughter. About two and a half years after the infant's birth divorce proceedings were instituted. The Missouri court held that the former husband was liable under an express contract to support the child.
{"Before agreeing to enter into marriage the wife asked for and received an express assurance that the husband would not later reject the child. The husband's response was that he would recognize the child and treat it as his own. This necessarily meant that he agreed to the same full incidents of child support as if he were the biological father. Just as a natural biological father would be liable for continuing support of this child after divorce, so also the husband in this case is similarly liable under his contract of support voluntarily assumed by him. The wife's agreement of marriage was a sufficient consideration to make that contract valid and binding." Id., 497 S.W.2d at 842.
To the contrary is Fuller Fuller, 247 A.2d 767 (D.C. App. 1968), where the woman was pregnant by another when she met her future husband. The couple did not marry until three months after the baby *871 was born, although the husband had permitted his name to be listed on the birth certificate as the father. The mother testified that prior to their marriage the husband promised that he would "provide a good marital home and her child would be included as part of the family unit". The court held that this promise was no more than an inducement to marriage and a commitment to support the child during the marriage, and that it did not constitute an agreement to continue such support after the marriage was terminated.
In the present case, the evidence of an express contract is stronger than the evidence which was found to be insufficient in Fuller, and at least as strong as the evidence found to be sufficient in L . The husband in Fuller offered to provide a home for his wife's illegitimate off-spring, born several months previously, only so long as the family unit, of which the mother and child were parts, remained intact. Here, as in L , the husband promised to treat the child as if it were his own, thereby agreeing to assume the child support obligations of a biological father. We conclude, therefore, that an express oral contract for the support of the child has been established.
 We must determine, however, whether the oral contract is unenforceable under the statute of frauds, Code | 11-2 (Repl. Vol. 1973), which provides:
{"No action shall be brought in any of the following cases: . . ."
{"(5) Upon any agreement made upon consideration of marriage; . . ."
{"Unless the promise, contract, agreement, representation, assurance, or ratification, or some memorandum or note thereof, be in writing and signed by the party to be charged thereby . . .."
A contract within the ambit of the statute is not void ab initio, but cannot be enforced. Burruss Hines, 94 Va. 413, 419, 26 S.E. 875, 877 (1897). The statute is procedural or remedial in nature, and is concerned, not with the validity of the contract, but with its enforceability. Brown Valentine, 240 F.Supp. 539, 541 (W.D. Va. 1965); Stein Pulaski Furniture Corp., 217 F.Supp. 587, 589 (W.D. Va. 1963).
The object of the statute of frauds is to prevent frauds and perjuries, and not to perpetrate them, so that the statute is not enforced when to do so would cause a fraud and a wrong to be perpetrated. Wheat Wheat, 3 Va. Law Reg. (N.S.) 177, aff'd. by a divided court, 119 Va. *872 861, 91 S.E. 827 (1916). See also Reynolds Dixon, 187 Va. 101, 46 S.E.2d 6 (1948).
Therefore, under certain conditions, where there has been part performance, a court of equity will avoid the statute and enforce an oral agreement. In such cases the parole agreement must be certain and definite, the acts proved in part performance must refer to, result from, or be made pursuant to the agreement, and the agreement must have been so far executed that a refusal of full execution would operate as a fraud upon the party, and place him in a situation which does not lie in compensation. Moreover, the act or acts of part performance must be of such unequivocal nature as to be evidence of the existence of an agreement. Pair Rook, 195 Va. 196, 205, 77 S.E.2d 395, 402 (1953). Indeed, the part performance must be consistent with no theory other than the existence of the alleged oral contract. Mann Mann, 159 Va. 240, 248, 165 S.E. 522, 525 (1932).
Ordinarily marriage is not such part performance as will take a case out of the statute. Hannon and als. Hounihan and als., 85 Va. 429, 12 S.E. 157 (1888). Here, however, there was more than just marriage. The wife abandoned her plans for employment and for the disposition by adoption of her expected baby. Although termination of the wife's employment plans may have been inconsequential, reconsideration of her plan to place her baby for adoption resulted in critical changes in the lives of both mother and child. The adoption plan, once abandoned, could not be revived years later, upon failure of the marriage, without necessarily producing more serious emotional impacts on both. In the alternative, the wife must raise an illegitimate child in a fatherless home, a responsibility she had originally determined to avoid by giving her baby the greater security and stability which adoptive parents might have been expected to provide. Hence, the wife's plans were irrevocably changed in reliance on the husband's promise, and there was substantial performance by both husband and wife under the agreement for more than four years. Pursuant to the husband's promise to support the child the mother received the benefit of his assumption of a share of her parental responsibility and legal obligation. The husband received the benefit of marriage to the woman of his choice, who renounced her previous plans and assumed her duties as a housewife, and of family life, which he accepted voluntarily, if not enthusiastically.
 Moreover, a party may be estopped by his statements or conduct from pleading the statute of frauds. To establish equitable estoppel, *873 it is not necessary to show actual fraud, but only that the person to be estopped has misled another to his prejudice, Security Co. Juliano, Inc., 203 Va. 827, 834, 127 S.E.2d 348, 352 (1962), or that the innocent party acted in reliance upon the conduct or misstatement by the person to be estopped. Khoury Memorial Hospital, 203 Va. 236, 243, 123 S.E.2d 533, 538 (1962). Elements necessary to establish equitable estoppel, absent a showing of fraud and deception, are a representation, reliance, a change of position, and detriment. United States Fidelity and Casualty Co. of New York, 402 F.2d 893, 898 (4th Cir. 1968).
We believe that the husband's promises to the wife, in reliance upon which she changed her position, acted to her detriment, and substantially performed her obligations until her husband made further performance impossible, have estopped him from pleading the statute of frauds. Accordingly, we hold that the wife has established an enforceable express oral contract by the husband to continue to support the child as if he were the natural father of the child. In view of this holding, we find it unnecessary to consider other theories advanced by the wife under which liability might be established in other jurisdictions.
For the reasons assigned we will reverse the judgment of the trial court and remand the case for determination of the amount, terms and conditions of the child support payments to be required of the divorced husband.
Reversed and remanded.