## CIRCUIT COURT OF THE CITY OF WINCHESTER

Larry T. Omps
and Nancy Omps

v.

Board of Zoning Appeals
of the City of Winchester

April 26, 1987

Case No. (Law) 86-L-122

By JUDGE HENRY H. WHITING

This case is before the Court on an appeal from an order of the Board of Zoning Appeals of the City of Winchester requiring the petitioners to install their garage doors on the north side of a garage extension rather than on the south side of that extension as originally installed. The extension itself was authorized by a special exception permit issued to the petitioners on July 21, 1986, which permitted the extension as a special exception to the zoning ordinance which required a setback of 35 feet but authorized the extension to be set back only 25 feet because it would not exceed the average setback of the houses on either side. The actual exception, dated July 21, 1986 (Petitioner's Exhibit 1), contained no reference to any plans, merely referring to the matter as a "Request for a Special Exception for Reduction of Front Setback Requirement." The remarks of the Administrator on that exhibit were:

> The applicant desires to construct a garage
> "as is" attached to front of residence. The
> front of the proposed garage will extend into
> the front setback area of the lot 10 feet. A

special exception is required to allow construction of the garage.

The decision was:

It was decided by majority vote to grant the front setback special exception due to the fact that if you took the average of the two side yards there would be enough room for the addition.[1]

There was no written statement anywhere in the proceedings as to where the garage doors would be located, but when the doors were located on the south side of the garage (Exhibit I) as shown on the plans (Court Exhibits 1 and 2)[2] the Board considered the matter again, first using a "stop order" (Exhibit E-1) and later rescinded it upon condition that the garage doors be located on the north side as shown on the original plans (Exhibit F-1).

This amendment of the special exception is sought to be justified by the Board of Zoning Appeals upon the ground that the petitioners displayed building plans showing the garage doors on the north side of the proposed addition when they applied for this special exception. Although there was no documentation whatever introduced to show that it was a condition of the variance, one of the members of the Zoning Board who voted in favor of the exception testified, over objection, that he based his motion in part upon the representation that the garage doors would be on the north side of the addition creating a courtyard effect with the front door of the house and

[1] Packer v. Hornsby, 221 Va. 17 (1980), invalidated the grant of the variance permitting an addition to a house within an ordinance setback line attempted to be justified because it would be "the average of the houses along this block" (id. at 122) as "'plainly wrong and in violation of the purpose and intent of the zoning ordinance'." Id at 123. Packer casts considerable doubt upon the grant of a special exception in this case but that issue is not before the Court and is not decided herein.

[2] These were the plans displayed by the property owners in the administrative hearing.

thus "enhancing the whole project." He said that the front entrance and design was an integral part of his decision but admitted that he did not mention the plans in his motion.

The narrow issue to be decided is whether the Board of Zoning Appeals has the right to amend a previously granted special exception to include verbal representations made by an applicant seeking to obtain a special exception.

*Packer* v. *Hornsby*, 221 Va. 17 (1980), teaches us that a Board of Zoning Appeals grant of a variance to a setback ordinance requirement is entitled to a presumption of validity and the Court may not disturb its decision unless that Board has applied erroneous principles of law or the evidence establishes that the decision was plainly wrong and in violation of the purpose and intent of the zoning ordinance. Thus we must examine the action of this Board of Zoning Appeals to see whether it applies an erroneous principle of law in incorporating verbal representations made by an applicant to induce the Board to grant the special exception.

There seems to be little doubt that unless those conditions are referred to in the document granting the exception they cannot be incorporated therein later; the City virtually concedes this by pitching its argument upon the principles of estoppel applicable to the property owner. (Letter dated October 29, 1986, memorandum dated December 11, 1986.) The cases in a number of jurisdictions have held that the applicant of a zoning permit cannot be bound by unrecorded oral representations made before the issuing authority. *Suburban Club of Larkfield, Inc. v. Town of Huntington*, 57 Misc. 2d 1051, 294 N.Y. Supp. 2d 4 (1968), affirmed 31 A.D.2d 718, 297 N.Y. Supp. 2d 893 (1968), appeal denied 24 N.Y.2d 739, 248 N.E.2d 455, 300 N.Y. Supp. 2d 1028 (1969) ("Conditions imposed by a zoning board must be expressed with sufficient clarity to inform an applicant of the limitations on the use of his land and cannot incorporate by reference statements of the applicant at the hearing," *id*. at 8); *South Woodbury Taxpayers Association, Inc. v. American Institute of Physics, Inc.*, 104 Misc. 2d 254, 428 N.Y. Supp. 2d 158, 162 (1908) ("The stated conditions must be sufficiently clear and definite so that the permitee and his neighbors are not left in doubt concerning the extent of the use permitted [citations omitted] [and that] the board may

not incorporate by reference, as a condition, statements made by the applicant at the hearing," *id.* at 162); *Bernstein v. Board of Appeals*, 60 Misc. 2d 470, 302 N.Y. Supp. 2d 141 (1969); *Rochester Historical Society v. Crowley*, 14 A.D.2d 490, 217 N.Y. Supp. 2d 619 (1961). *See also Springfield Township v. Bensley*, 19 N.J. Super. 147, 88 A.2d 271 (1952). In *Appeal of Farrell and Desautels, Inc.*, 135 Vt. 614, 383 A.2d 619, 621 (1978), the trial court was reversed in binding an applicant to oral statements he made to obtain a building permit committing part of his land to a particular use holding:

> Whatever the discussion at the original hearing, or the internal considerations which prompted board members to grant the requested permit, no condition respecting future use of the premises found its way into the findings as filed or the order as issued. We cannot subscribe to the proposition that a formal written order which contains some *express* terms and conditions can also be said to carry with it silent and *unexpressed* terms and conditions. Having clearly in mind the provisions of 24 V.S.A. § 4472(a) making the statutory appellate route the sole remedy of an aggrieved party, from what could appellant have appealed? It could not have appealed the granting of the permit because that was what it sought. And it could not have appealed any condition imposed because it would have had no notice of it. The maintenance of official records surely has a definite purpose; one need only consider the plight of a subsequent purchaser in order to perceive the sagacity of the requirement that conditions imposed be express, and that conditions not expressed in the findings and order be disregarded, whatever the state of mind and unexpressed considerations of the adjudicative body. *Id.* at 621. (Emphasis in original.)

There being no express requirement that the building be constructed in any particular manner within the setback line and collateral evidence being inadmissible to establish the petitioners' alleged oral representations to the

Board inducing the granting of the special exception, the issue of estoppel is thus squarely presented and argued by the City in support of its right to issue a subsequent special exception expressly conditioning its grant upon the location of the garage doors on the north side of the extension.

Ordinarily a claim of estoppel applies to matters of fact, § 1 *Estoppel and Waiver*, 28 Am. Jur. 2d 599, and if applied in this case would be an extension of Lord Coke's statement that: "[i]t is called an estoppel or conclusion, because a man's own act or acceptance stoppeth or closeth up his mouth to allege or plead the truth." 2 Coke on Littleton 352a. If estoppel is to be applied in this case, it is an estoppel to assert the correct principle of law, that any conditions must be expressly stated in the special exception permit and if not so expressed such conditions are not binding upon the holder of that permit. While early cases on estoppel required some sort of fraudulent or intentional misrepresentation, *McCullough v. Dashiell*, 78 Va. 634 (1884), the City need not plead or prove a specific intent to mislead or defraud; all it need show is that the statement or conduct of the person to be estopped misled another to his prejudice. *United States v. Fidelity & Casualty Company of New York*, 402 F.2d 893 (4th Cir. 1968); *T. v. T.*, 216 Va. 867, 872 (1976). However, there must be (1) a representation, (2) reliance, (3) a change of position and (4) detriment. *Ibid*. Moreover, estoppel cannot be based on argument or inference. *American Security & Trust Co. v. Juliano, Inc.*, 203 Va. 827, 834 (1962). There the Court refused to infer an estoppel by a course of conduct of a bank in accepting the payment of collateral from a mortgage broker over an extended period of years with the broker releasing the collateral after payment. In *Juliano* the broker became insolvent and the Court held that in the absence of some activity by the bank holding the mortgage broker out as an agent to collect the funds and release the security no such agency or estoppel could be inferred. Moreover, equitable estoppel or estoppel *in pais* "is not available to a party unless he can show that he has acted in reliance upon an action or statement of the other party." *Choury v. Community Memorial Hospital, Inc.*, 203 Va. 236, 243 (1962) (no estoppel found where

change of position occurred *before* the alleged statements giving rise to estoppel had occurred). .

The City has cited a number of cases in support of its argument of equitable estoppel or estoppel *in pais*. *Harris v. City of Roanoke*, 179 Va. 1 (1942), held a plaintiff who had executed a release of two of three joint tortfeasors was estopped to assert the claim against the third party, alleging that the first two parties were not joint tortfeasors with the defendant who was the real wrongdoer, but the Court held that the release constituted an estoppel by conduct in that the claimant recited that the settlement made covered all the claims she had for damages arising out of the accident and thus was a position entirely inconsistent with the position taken in asserting the claim against the third party. Unlike *Harris*, which was an express representation, the best the City can make of the property owners' conduct is an implied representation by submitting the plans but no certain and definite assurance that the garage doors would be built on the north side any more than there was an assurance that certain windows or doors would be placed in certain positions.

The evidence is not sufficiently definite to establish unambiguous representations by Mr. Omps that in any event the doors would be built on the north side. "To constitute an estoppel by conduct, the misrepresentation must be plain, not doubtful or a matter of mere inference. There must be actual conduct calculated to impress upon the mind of another a belief in a certain state of facts." *Juliano* at 834.

The testimony of one member who made the motion and may have indicated his reliance upon the plans is hardly sufficient to show a reliance by the administrative body itself; the transcripts indicate no such representation or reliance by that body.[3] *The member making the motion said:*

> I move that we grant the special exception
> of front yard setback, the reason being, he
> could be allowed to build 14 feet onto front

---

[3] The Court does not decide whether the Board could have made the location of the garage doors a condition of its approval.

and actually with the averages of the two and if we want to take that into account and add the extra 2 feet it would be up to 16 feet. The property lends itself to the addition, I think .... The only other requirement I would like to see if whether we could put the contingency of brick siding the garage--can't do that. (Exhibit C, page 1.)

The minutes reflect:

Mr. Omps was present and explained that in 1954 the setback requirement was 25 feet. Mr. Delmar Robinson of 130 Hawthorne Drive spoke in opposition due to the type of precedent that this request may set. Mr. J. T. Creamer, who owns the property next to 131 Hawthorne, wanted to know which way the water will drain. ... On motion by Mr. Toan, seconded by Mr. Dickinson, the request for a special exception was granted based on the fact that the proposed setback would not exceed the average setback of the houses on either side. (Exhibit D, pages 2, 3.)

At a subsequent Board of Zoning Appeals meeting the minutes reflect:

Mr. Johnston [zoning administrator] notified the Board that the garage for which a special exception was not granted. . . was not being constructed as shown in the plans presented when the Board considered this request. .... The Board of Zoning Appeals directs the City Zoning Administrator to issue a stop work order for the garage being built by Mr. Larry Omps at 131 Hawthorne Drive. The stop work order should be issued for two reasons, first, because the garage is not being constructed as shown in the material presented when the Board considered the special exception, and, second, locating the garage door on the south side instead of on the north side [as shown] would have the potential to impair established property value

in the surrounding area based on concern earlier expressed by the landowners, and the statements of the applicant. (Exhibit E-1, page 3.)

The transcript of the meeting giving rise to that resolution provides in part as follows:

Mr. Johnston: Speaking of viewings, I don't know if you've been getting any calls regarding the Omps garage. As you may remember Larry Omps brought in the variance/special exception for 10 feet front yard special exception on Hawthorne Drive. It's under construction as you may remember the plans he brought in the garage was facing within the "L" it was towards the front of the house. He is now constructing it so that the garage doors are on the opposite side, they are facing south. . . . Mr. Kremer brought this to my attention. Your motion did not stipulate where the garage doors had to be built. It really was not a topic of discussion among the Board. Mr. Kremer who happened to be in today said he mentioned it and I don't think it really made an impression on anyone at that point. He presented his information with the garage door on the north side but that was not part of your motion and there was no stipulation from the Board stating where the door had to be.

Chairman Adams: Let me refresh the Board's memory of this thing. Mr. Omps stated that himself where the doors would be and that's the assumption we went under with his explanation his sketch showed that that was in his application too that's what we considered.

Mr. Phillips: He stayed within the confines--I know he's changed it--I've seen him change it.

Mr. Toan: He just moved the door from the north to the south.

Mr. Johnston: You can change building plans. Initially because it was not specifically part of your motion that means the Board literally

speaking didn't care where the doors went. (Exhibit E-1.)

A city council may act only in a meeting of its members, informal action by any less than all of them in a regularly called meeting cannot be the action of the council. § 152 *Municipal Corporations*, 56 Am. Jur. 2d 204; 4 McQuillin, *Municipal Corporations* § 13.01, page 645, 13B Michie's Jurisprudence 57, *Municipal Corporations* sect. 22. A Zoning committee of the council could hardly have any other rights and therefore the body itself cannot be said to have relied upon such conduct just because one member said he did. Incidentally, his conduct and remarks at the hearings fall far short of showing that the garage doors were a consideration until after the dispute arose.

The City has cited *Burkhardt v. Board of Zoning Appeals*, 192 Va. 606 (1951), in support of its argument that the plans should be taken as part of the approval and read as a condition of the approval. *Burkhardt* is inapposite. It involved a protest by an adjoining property owner and the granting of a variance and involved the sufficiency of the evidence to justify the variance. Moreover, the Richmond Board expressly referred to the conditions in its permit. *Id.* at 617.

For this same reason the additional citation by the City on April 6, 1987, of *Hazel v. Metropolitan Development Commission of Marion County*, 289 N.E.2d 308 (Ind. 1972), is inapposite with the zoning administrator's explanation in the meeting. "His sketch showed that that was in his application, too. That's what we considered."

Mr. Phillips (a Board member): "He stayed within the confines--I know he's changed it--I've seen him change it."

Mr. Toan: "He just moved the door from north to the south."

Mr. Johnston: "You can change building plans. *Initially because it was not specifically part of your motion that means the Board literally speaking didn't care where the doors went.*" (Exhibit E-2.) (Emphasis added.)

In *Hazel* the Court grounded its decision upon the fact that:

A mere notation therefore upon a plat plan concerning "possible future" use is not enough to support Hazel's contention that Superior Three approved a variance to cover the entire lot. A variance for the whole lot was not requested. To the contrary, the request was "per plans," which limit the storage of vehicles to a definite and designated portion of the entire lot. Furthermore, the judgment of Superior Three specifically limited the variance "as applied for by the plaintiff." *Id.* at 313.

Finally, "[o]ne who claims the benefit of an estoppel on the ground that he has been misled by the representations of another must not have been misled through his own want of reasonable care and circumspection. A lack of diligence by a party claiming an estoppel is generally fatal." *Estoppel & Waiver* § 80, 28 Am. Jur. 2d 721. The neglect to mention the plans as a condition shows a lack of reasonable care.

The decision of the Board of Zoning Appeals is erroneous as a matter of law and the relief prayed for should be granted.