## Salem
NPA

v.

WBA

No. 0576-88-3

Decided May 16, 1989

Harvey S. Lutins (Lutins & Shapiro, on brief), for the appellant.

No brief or argument for appellee.

OPINION

**COLEMAN, J.**—In this appeal we decide whether a husband (WPA) who is not the biological father of his wife's child can be required to support the child after divorce when he has reared and supported the child for the five years since birth under the false belief that he was the child's father. In the divorce proceeding the trial court ordered, pursuant to Code § 20-49.3, that the wife (NPA), the husband, and two children submit to the human leukocyte antigen (HLA) blood test to determine paternity. The HLA test results established conclusively that the husband was not the biological father of the five year old male child, but was the father of the three year old daughter. The trial court ruled that the husband is not liable for the support of his former wife's son. No issue is raised concerning the daughter.

On appeal the wife contends that her former husband should be required to support the child based on one of several legal theories applied in similar cases in Virginia or other jurisdictions: (1) common law adoption; (2) *in loco parentis*; (3) implied contract; or (4) equitable estoppel. We find that on the facts before us none of these doctrines provide a basis to require the husband to support the child. Thus, the trial court properly ruled that the husband was not liable for support of the son.

The parties married in September 1977. They had marital problems which caused them to separate between April 1980 and 1981, during which time both parties dated other people. They reconciled and resumed cohabitation in 1981. The wife testified that, before the reconciliation, she told her husband that in October 1980 she had sexual intercourse with another man. She testified that during the separation she and her husband also had sexual intercourse on numerous occasions. Shortly after their reconciliation the wife discovered that she was pregnant. She gave birth to a son in May 1981. She testified that her husband was upset by her pregnancy. She told him that if he had any doubts about being the father he should have a blood test while she was in the hospital, but if he did not he should never again raise the issue. The husband testified that he accepted as true his wife's statement that he was the child's father and did not request that the blood test be administered. After the child's birth, the parties resumed their marriage and proceeded with the responsibility of rearing the child. The parties gave the child the husband's sur-

name. Both parties testified that the husband treated the child as his own son throughout the remaining years of the marriage. A second child, a daughter, was born to the marriage a few years after the son's birth.

In May 1985 the wife filed for divorce and requested child and spousal support, child custody and equitable distribution. The parties agreed upon temporary support and child custody. The husband filed an answer and cross-bill alleging that the wife caused the dissolution of the marriage. In an amended cross-bill he also alleged that he was not the biological father of the two children. The trial court ordered HLA testing. The results of the HLA test established that the husband was the biological father of the daughter, but that it was genetically impossible for him to be the natural father of the male child. The trial court granted the wife a divorce, ordered the husband to pay spousal support and $250 per month child support for the daughter. Based on the HLA test results, the trial court found that, because the husband was not the biological father of the child, and because he had neither adopted the child nor contracted to support the child, he had no legal support obligation. The wife challenges the trial court's child support ruling and contends that the husband has assumed and owes a legal duty to support her son.

The general rule in Virginia is that a parent owes a duty of support only to his or her natural or legally adopted child. *See T. . . v. T. . .*, 216 Va. 867, 869, 224 S.E.2d 148, 150 (1976). Furthermore, "[a] husband is not liable, merely because of his status as husband, for the support of his wife's illegitimate child born before or after marriage." *Id.* However, when a child is born in wedlock the law presumes legitimacy and the presumption can be rebutted only by "strong, distinct, satisfactory and conclusive" evidence. *Cassady v. Martin*, 220 Va. 1093, 1097, 266 S.E.2d 104, 106 (1980) (quoting *Scott v. Hillenberg*, 85 Va. 245, 246-47, 7 S.E. 377, 378 (1888)); *see also Gibson v. Gibson*, 207 Va. 821, 825, 153 S.E.2d 189, 192 (1967). Code § 20-49.4 specifies various factors which can be considered to determine paternity. The HLA blood test can determine the probability of paternity to a high degree, but it also can, by a system of comparing genetic markers, conclusively exclude a person as a biological parent of a child. *Bridgeman v. Commonwealth*, 3 Va. App. 523, 526, 351 S.E.2d 598, 600 (1986). In the present case the husband's evidence, con-

sisting of the HLA test results which conclusively disproved paternity and the wife's admission that she had sexual intercourse with another man during the separation, was sufficient to rebut the presumption of legitimacy.

The appellant argues, however, that regardless whether the husband is her son's biological father, this court should hold that he has a legal duty to support the child under one of the four theories mentioned by the Virginia Supreme Court in *T. . . v. T. . .*, 216 Va. 867, 224 S.E.2d 148 (1976). In *T. . . v. T. . .*, the Court recognized that other jurisdictions have held a husband liable for support of his wife's illegitimate child under one of several theories, depending upon the circumstances: (1) expressed oral contract; (2) estoppel; (3) common law adoption; or (4) the husband standing *in loco parentis* to the child. 216 Va. at 869, 224 S.E.2d at 150. *T. . . v. T. . .* held that a husband who had full knowledge of the facts was liable for support of his former wife's illegitimate son based upon a partially performed express oral contract to support the child "as if it were his own." The wife also contends that the Supreme Court tacitly approved the other doctrines mentioned in *T. . .*.

First, we find no support in *T. . .* for the theory of common law adoption. With regard to the other theories mentioned in *T. . .*, we need not decide whether they were in fact approved. On the facts of the case, we conclude that they would not require the husband to support this child.

I.

Adoption in Virginia is solely a creature of statute. The common law as it developed in Virginia did not recognize adoption other than by statutory process. *Harmon v. D'Adamo*, 195 Va. 125, 129, 77 S.E.2d 318, 320 (1953); *Shephard v. Sovereign Camp*, 166 Va. 488, 495, 186 S.E. 113, 116 (1936). We find nothing in *T. . .* to support a theory of common law adoption in Virginia. Since Virginia does not recognize common law adoption, the rights and responsibilities incidental thereto, such as support, likewise do not exist.

## II.

█ The theory of *in loco parentis*, provides, in effect, that a stepparent or one who knowingly and voluntarily assumes the role of parent to a child may obtain certain legally cognizable rights and obligations the same as if between "a parent and child" but only so long as the relationship which gave rise to the rights and duties continues to exist. *Doughty v. Thornton*, 151 Va. 785, 792, 145 S.E. 249, 251 (1928). The theory is inapplicable on these facts.

The husband did not knowingly and voluntarily accept another man's child into his care. *See id.* at 792, 145 S.E. at 251. Instead, on the erroneous assumption that he was the child's natural father, he brought the child into his home and under his care. We are mindful that the child, who well may have an affinity for the husband as his father, is an innocent victim of his parent's problems. However, in the absence of consanguinity, legal adoption, or a knowing and voluntary assumption of the obligation to provide support, the law will not compel one who has stood in the place of a parent to support the child after the relationship has ceased. Essential to the status of *in loco parentis* is an intent to assume and continue a parental relationship. *A. S. v. B. S.*, 139 N.J. Super. 366, ____, 354 A.2d 100, 101 (1976). The husband did not, with full knowledge of the facts, at any time voluntarily assume the role of a parent to this child.

█ Furthermore, when the relationship which brought about the status of *in loco parentis* is terminated, "the reciprocal rights, duties, and obligations of parent and child" do not survive independent of the relationship, except by agreement or goodwill. *Doughty*, 151 Va. at 792, 145 S.E. at 251; *see also Clevenger v. Clevenger*, 189 Cal. App. 2d 658, 11 Cal. Rptr. 707 (1961) (the obligation assumed by stepparent to support a stepchild is not a continuing one, but may be abandoned at any time, and ordinarily ceases with the divorce of the stepparents); *Franklin v. Franklin*, 75 Ariz. 151, 253 P.2d 337 (1953); *Renkiewicz v. Renkiewicz*, 180 Conn. 114, 429 A.2d 833 (1988); *see also* H. Clark, Jr., *The Law of Domestic Relations in the United States* § 7.2 (2d ed. 1988).

## III.

Next the wife argues that the discussion with her husband at the hospital shortly after the child's birth about having a blood test to determine paternity constituted an implied contract by the husband to accept and support the child as his natural son. The trial court did not find on these facts that the husband agreed to support the wife's child regardless of whether he was the natural father.

In *T. . . v. T. . .*, the Court found that an expressed oral contract was entered between the parties that if the expectant mother would forego her plans to place the child by another man for adoption, forego her plans to move to New York where she had employment, and marry him that he would accept the child into the family and rear the child "as if it were his own." 216 Va. at 868, 224 S.E.2d at 149. In *T. . .* the wife had detrimentally relied upon her future husband's promises. The agreement was a partly performed parole contract enforceable against the husband. *Id.* at 871, 224 S.E.2d at 152. Clearly no express contract to support the child existed between the parties in the case before us. The wife does not contend otherwise; however, she argues that on these facts we should imply a contract between the parties.

Here the husband accepted his wife's son into his home on the mistaken assumption that the child was his own. His inaction or silence after his wife raised the possibility of a blood test to determine paternity did not cause her to act to her detriment. Likewise, his conduct cannot be considered an implied agreement to support the child if he were not the natural father. To enforce a duty of support on the husband based upon a theory of express or implied oral contract, we must be able to ascertain from the record that the husband knowingly and intentionally entered into an agreement with the wife to support her illegitimate child. *Id.* at 869-71, 224 S.E.2d at 150-51; *see also Clevenger v. Clevenger*, 189 Cal. App. 2d 658, 11 Cal. Rptr. 707 (1961); *Fuller v. Fuller*, 247 A.2d 767 (D.C. App. 1968). The record establishes that the husband accepted the wife's representation that he was the child's father. In view of her assurance, his failure to pursue a course of action which only might have confirmed the child's paternity and which almost certainly would have further strained the parties' reconciliation, does not constitute sufficient evidence from which

an implied contract to support another person's child can be inferred.

## IV.

■ Finally, the wife argues that the husband should be barred or equitably estopped from denying his duty to support the child. Virginia courts have never applied a doctrine of equitable estoppel in the context of child support cases; however, a number of other jurisdictions have relied upon estoppel principles to prevent a husband from repudiating his voluntary commitment to support his wife's illegitimate child. *See In re Marriage of A.J.N. & J.M.N.*, 141 Wis. 2d 99, 414 N.W.2d 68 (1987) (recognizing equitable estoppel as a basis to require support but on similar facts found no estoppel); *Knill v. Knill*, 306 Md. 527, 510 A.2d 546 (1986) (court refused to apply estoppel where no representation, reliance, or detriment and right to pursue remedy against natural father not prejudiced); *M. H. B. v. H. T. B.*, 100 N.J. 567, 498 A.2d 775 (1985); *Wiese v. Wiese*, 699 P.2d 700 (Utah 1985); *see generally* Annotation, *Liability of Mother's Husband, Not the Father of Her Illegitimate Child, For Its Support*, 90 A.L.R. 2d 583, 586-89 (1963). The Virginia Supreme Court recently stated that the "[e]lements necessary to establish equitable estoppel, absent a showing of fraud and deception, are a representation, reliance, a change of position, and detriment . . . . Moreover, the party who relies upon equitable estoppel must prove each element by 'clear, precise and unequivocal evidence.'" *Dominick v. Vassar*, 235 Va. 295, 298, 367 S.E.2d 487, 489 (1988). Assuming without deciding that child support by estoppel exists as a basis for us to prohibit a husband from terminating his support commitment to his wife's illegitimate child, on these facts we find that the requisite requirements for an estoppel do not exist.

Although the husband had assumed the role of father for the child's entire life, he did not knowingly misrepresent to the child that he was his natural father. *See M.H.B. v. H.T.B.*, 100 N.J. at ———, 498 A.2d at 779. Throughout the husband's relationship with the child, he acted under the mistaken belief that he was the child's natural father and supported the child. That he might have had a question or doubt as to his paternity at the child's birth does not establish an intent to falsely represent himself to the child as the child's natural father. Furthermore, the child suffered no det-

riment by having been cared for and supported during the five year relationship where no legal duty to do so existed. In fact, the child has received the benefit of the husband's love and support. The husband's voluntary support of the child during the marriage based upon his mistaken belief that he was the child's father did not deprive the wife or the child of his cause of action against the biological father for child support. *Knill v. Knill*, 306 Md. at 563, 510 A.2d at 550.

Accordingly, for the reasons stated above we affirm the trial court's holding that the husband is not liable to support the wife's illegitimate son.

*Affirmed.*

Koontz, C.J., and Benton, J., concurred.