## CIRCUIT COURT OF FAIRFAX COUNTY

Stacey Woodings Schalton

v.

David John Schalton

March 16, 1993

Case No. (Chancery) 128343

BY JUDGE THOMAS A. FORTKORT

This case is before the Court on appeal. Petitioner Stacey W. Schalton contests the ruling of the Fairfax County Juvenile and Domestic Relations District Court, which held that Respondent David J. Schalton does not owe any duty of support for the minor child Hillary Louise Schalton. For the reasons explained below, the ruling of the District Court is affirmed.

The facts underlying this case are unusual as well as unfortunate. The parties to this litigation, David John Schalton and Stacey Woodings Schalton, were married on September 19, 1981. They adopted a son, John Vernon Schalton, who was born in 1987. Hillary Louise Schalton was born in December of 1988. Hillary's birth parents, Carla and Andrew Adams, entered into a written custody agreement with the Schaltons on December 22, 1988, under which the latter were granted "full principal custody and guardianship" of the infant for a period of one year. John and Stacey Schalton also filed a petition to adopt Hillary. Consents to the adoption were signed by Carla and Andrew Adams on March 22, 1989, but the legal proceedings did not advance any further.

In July of 1992, an "entrustment agreement" was signed by Carla and Andrew Adams. This agreement named only Stacey Schalton, (referred to in the agreement as "the adoptive person" or "the adoptive parent") as Hillary's "true and lawful guardian." There is no mention of David Schalton in the July, 1992, entrustment agreement. David and

Stacey Schalton now are divorcing. The issue before the Court is whether David Schalton owes any duty of support to Hillary, whom he has never legally adopted.

In the absence of a formal adoption, there are three theories by which a person may be compelled to support a child not his or hers by birth. *NPA v. WBA*, 8 Va. App. 246 (1989). These theories are *in loco parentis*, express or implied oral contract, and equitable estoppel. *Id.* The theory of *in loco parentis* is inapplicable to the present case; under that theory, the parental obligations exist only so long as "the relationship which brought about the status of *in loco parentis*" remains intact. *Id.* at 251 (citations omitted).

The theory of oral contract is predicated on an express or an implied agreement to support the child of another. *Id.* In *NPA*, the Virginia Court of Appeals ruled that a husband who had "accepted his wife's son into his home on the mistaken assumption that the child was his own" was not required to contribute to the support of the child because "his conduct cannot be considered an implied agreement to support the child if he were not the natural father." *Id.* at 252. Likewise, in the case at bar David Schalton's conduct resulted from the assumption that he was to become Hillary's adoptive father. That relationship, however, has never materialized, and there was no implied agreement to continue Hillary's support otherwise.

The third and final theory to be considered is equitable estoppel. *Id.* at 253. The elements of equitable estoppel are "a representation, reliance, a change of position, and detriment," each of which must be shown by clear, precise and unequivocal evidence. *Id.* at 253 (citing *Dominick v. Vassar*, 235 Va. 295, 298, 367 S.E.2d 487, 489 (1988)). In *NPA* the parties, a husband and wife, had both dated others during a period of separation. *Id.* at 248. Shortly after their reconciliation, the wife discovered she was pregnant. *Id.* Although there was some doubt as to the child's paternity, the husband rejected his wife's suggestion of a blood test, and "treated the child as his own son throughout the remaining years of the marriage." *Id.* When the parties divorced, a blood test demonstrated that it was impossible for the husband to be the child's natural father. *Id.*

In rejecting the estoppel theory in *NPA*, the Court noted that while "the husband had assumed the rule of father for the child's entire life, he did not knowingly misrepresent to the child that he was his natural father." *Id.* at 253 (citations omitted). In the case at bar there is no

issue of an intentional misrepresentation. The father in *NPA* conducted himself as the child's natural father; David Schalton conducted himself as Hillary's adoptive father. In both cases the presumed relationship turned out to be nonexistent. The *NPA* court also pointed out that "the child suffered no detriment by having been cared for and supported during the . . . relationship where no legal duty to do so existed." *Id.* Here, as in *NPA*, the child "has received the benefit of the husband's love and support." *Id.*

The facts of the instant case are very different from those of *T. v. T.*, 216 Va. 867 (1976), in which the Virginia Supreme Court ordered continuing child support based on an express oral agreement. In *T.*, the wife became pregnant while single. *Id.* at 868. She "made plans to move to another state, have her baby, and then put the child up for adoption." *Id.* The husband persuaded her to abandon her plans and marry him, promising to care for her child "as if it were his own." *Id.* The court imposed a support obligation based upon this "express oral contract for the support of the child." *Id.* at 871. Equitable estoppel was discussed in *T. v. T.* not as an independent legal theory, but only because it precluded the husband from pleading the statute of frauds as a defense to the contract action. *Id.* at 872. In *T.*, there was an express oral contract to support a child regardless of paternity; in the case at bar, support clearly was predicated on the assumption that David Schalton would become Hillary's adoptive father.

This Court finds no basis upon which to order David Schalton to support Hillary. Accordingly, the ruling of the District Court is affirmed.