### 5182. JENNINGS *v.* THE STATE.

The evidence was not sufficient to authorize the verdict.

DECIDED OCTOBER 28, 1913.

Indictment for incestuous adultery; from Montgomery superior court—Judge George presiding. July 30, 1913.

*C. P. Thompson,* for plaintiff in error.

*W. A. Wooten, solicitor-general,* contra.

POTTLE, J. The accused was convicted of incestuous adultery with his stepdaughter. The evidence was substantially as follows: The girl was 17 or 18 years of age and had been living in the house with her mother and the accused ever since the marriage of the accused to the mother some 14 or 15 years before. Upon being informed by the mother that the girl had missed her menstrual period, the accused called upon a negro midwife, who at the time was living eight miles away from his home, and requested the woman to do something to relieve the girl, stating at the time that she had caught cold and was suffering from menstrual suppression.

In response to a question by the midwife, the accused stated that the girl had missed her periods for several months. Thereupon the midwife declined to make any effort to give the girl relief. She finally, however, consented to go and make an examination and ascertain what the trouble was and see if she could do anything. On the way home the accused told the midwife that he had been accused of being the author of the girl's trouble, and that if she did not "do something for him, the crowd would do something for him." At this time, however, he strenuously denied that he had anything to do with the girl. When they reached the house the midwife discovered that the girl was well advanced in pregnancy. The accused told her, if she did not believe what he stated about not having brought about the girl's condition, to ask the girl. Subsequently the midwife did ask the girl and she replied that "pa" brought about her condition. At the time this reply was made, the accused was in an adjoining room, near enough to have heard the conversation between the girl and the midwife, and made no denial of the accusation, but turned and walked away. The midwife testified that she did not know whether the accused heard what the girl said or not, but that he was near enough to have heard it. It further appears that the girl had remained practically all the time in her stepfather's house, rarely, if ever, leaving the county. The girl was not sworn as a witness. The conviction of the accused was based entirely upon the testimony of the midwife, together with the evidence that the girl had been at his home continuously for a number of years. No evidence was introduced in behalf of the accused.

Eliminating immaterial facts, the only evidence produced against the accused consisted of the fact that he sought the services of a midwife to bring about an abortion, that he stated to the midwife that he was being charged with a crime in reference to the matter, that he endeavored at first to mislead the woman into the belief that the girl was not pregnant, that the girl charged "pa" with being the author of her shame, and that he did not then and there deny it. These facts and circumstances were not sufficient to justify the conviction. In every criminal case there is a presumption of law that the accused is innocent. Added to this, in a charge of this character, there is a natural presumption that the accused would not be guilty of an offense so heinous as the one charged in the

present bill of indictment. To convict, the proof must be strong enough to exclude all reasonable doubt of the innocence of the accused and to exclude every other reasonable hypothesis save that of his guilt. The accused stated that he had always felt toward the child as if she was his own daughter. The jury had a right to disregard this statement of the accused entirely, but it accords with the natural feelings the law would presumptively ascribe to a person occupying toward the girl the position of the accused, and would prevent his conviction, unless the proof came well up to the standard prescribed by law. The relation of stepfather and stepdaughter is such that intercourse between them is regarded by law as incestuous. *Lipham* v. *State,* 125 *Ga.* 52 (53 S. E. 817, 114 Am. St. R. 181, 5 Ann. Cas. 66). Incestuous adultery is a felony, and the female is regarded as an accomplice. Her uncorroborated testimony is, therefore, not sufficient to sustain the man's conviction. *Solomon* v. *State,* 113 *Ga.* 192 (38 S. E. 322); *Yother* v. *State,* 120 *Ga.* 204 (47 S. E. 555); *Durden* v. *State,* 120 *Ga.* 860 (48 S. E. 315). In the case last cited, it appeared that the female was a niece of the accused, that she visited his home for ten days, that about nine months after the visit she gave birth to a child, which, according to one witness, favored the accused. The girl testified that the accused was the father of the child. The conviction was set aside upon the ground that there was no sufficient evidence to support it. If the accused could not have been convicted on the uncorroborated testimony of his stepdaughter delivered under oath, certainly the mere hearsay testimony of another person, that the girl had charged her "pa" with being the author of her shame, would not alone be sufficient to justify his conviction.

It is true, the jury were probably authorized to find that the accused heard the charge made by the girl and did not deny it. This is a circumstance against him, but it is by no means conclusive of his guilt. The natural feeling of horror and repulsion that one standing in the position of the accused would have had at a false accusation of this nature might well have caused him to turn and walk away in sorrow and shame without raising his voice in protest. He had previously protested his innocence to the midwife, and had even suggested to her that she interrogate the girl to find out who had committed the offense. This conduct of the accused was more inconsistent with guilt than his silence was inconsistent with innocence.

There were two witnesses for the State,—the midwife and a white man who lived in the same community with the accused. With this last witness the accused put his character in issue, and from the lips of this witness came the statement that he had known the accused for ten or fifteen years, that his character was good, that before this charge was made nothing improper had ever been heard of by him, and that he was honest and upright. The State did not attempt to meet this testimony in reference to the good character of the accused. Where one is on trial for a despicable offense of this nature, good character is and ought to be regarded as a strong circumstance in his favor. A normal man is loath to believe that a man of the character which the accused seems to have been would deliberately bring about the ruin of his own step-daughter whom he had taken into his home as an infant and nurtured just as if she had been his own flesh and blood. The accused may be guilty, but possibility of guilt is not enough to authorize his conviction. Where, as in the present case, the conviction is dependent largely upon circumstantial evidence, the circumstances must be inconsistent with innocence, and must be so strong as to exclude every other reasonable hypothesis than that of his guilt. The evidence in this case did not come up to the standard of proof required by law, and for this reason the verdict of guilty should have been set aside.

The point is made in the record that the venue of the offense was not proved. This point seems also to be well taken, but we do not deal with it specifically, because in our opinion the evidence was not sufficient to show that any offense at all was committed by the accused. 　　　　　　　　　　　　*Judgment reversed.*