## 35800. BAKER v. THE STATE.

NICHOLS, Justice.

Lilton Baker appeals his convictions of murder, aggravated battery, two counts of incest and simple battery. He was sentenced to life imprisonment for murder, to fifteen years each for aggravated battery and incest, and to twelve months for simple battery.

From the evidence presented at trial the jury was authorized to find the following facts: On Sunday, November 26, 1978, the victim, Bobby Lee Simmons, and his family were visiting appellant's neighbor. Earlier that week, Simmons and appellant had talked about the sale of a car motor, and Simmons walked over to appellant's trailer to check on it. As Simmons approached, appellant called him over to look at the motor in a blue Chevrolet. While Simmons was looking at the motor, appellant began hitting Simmons with an ax handle. Appellant beat Simmons on the head, arms, back and legs causing extensive injuries. Appellant continued to beat Simmons until the victim was on the ground and almost dead. When the victim's wife came over to appellant's yard, appellant told her she had seven minutes to remove the victim from appellant's property or he would kill him. A deputy sheriff arrived on the scene and witnessed the victim being pulled from appellant's yard and heard appellant's threat to the victim's wife. An ambulance arrived and took the victim to the hospital. The victim suffered a fractured jaw and severe injury to the head. The victim died either from brain hemorrhage, caused by trauma to the head, or from pulmonary edema, caused by breathing blood into the lungs as a result of bleeding in the victim's mouth.

Later that evening, a Georgia Bureau of Investigation agent went to appellant's trailer. The agent found appellant's wife, Willie Mae Baker, and his two daughters, Barbara (age 15) and Lisa (age 13), in the trailer. All three were taken to the hospital. Mrs. Baker

suffered from multiple bruises on her head, chest, legs, and buttocks. Lisa suffered from multiple bruises and swelling on her body and face. Barbara had a fractured jaw.

At trial, Mrs. Baker testified that appellant had beaten her with part of a chair. Appellant's purpose was to ascertain if she had had sexual relations with other men. Mrs. Baker denied any sexual activity, but appellant continued to beat her on the legs, head, and face. Appellant also took her crutch, which she was using because of a previously broken ankle, and he used it to punch her in the stomach. Appellant continued to beat his wife until she "admitted" having sexual relations with other men and with appellant's father. Mrs. Baker testified that she only admitted such activity so appellant would stop beating her. In addition, Mrs. Baker testified that upon her return home one evening she found appellant lying nude with Lisa in the living room.

At trial, Lisa testified that her father beat her and had sexual intercourse with her. Lisa testified that her father committed incest upon her both at home and in the sleeping compartment of his truck. Lisa also testified that appellant had sexual intercourse with Barbara. Lisa said she knew this because she was in the same motel room and in the truck with them.

Barbara testified that her father beat her and broke her jaw. According to Barbara, appellant beat her after accusing her of "fooling around with a hundred men.". Barbara said she told her father that she had never "fooled around" with the victim. But when appellant continued to beat her she relented and said she had. Barbara also testified that her father had sexual intercourse with her in their mobile home and in the truck. She also testified that appellant had sexual relations with Lisa. The appellant, in his testimony, admitted "whipping" his wife and both daughters. He also admitted hitting Barbara with his fist breaking her jaw. Additional facts from the record will be mentioned as required in the following discussion.

### Enumerations of Error

1. Appellant's first two enumerations of error assert

the general grounds that the verdict is contrary to law and the evidence. The evidence was sufficient for a rational trier of fact to find appellant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Crawford v. State,* 245 Ga. 89 (263 SE2d 131) (1980); *Stinson v. State,* 244 Ga. 219 (259 SE2d 471) (1979).

2. Appellant's third enumeration of error asserts that the trial court erred in denying his motion for a change of venue. Specifically, appellant contends that half the jury panel had some knowledge of the case, and because of this and the case's notoriety, the appellant could not obtain a fair trial. On the other hand, appellant also states that none of the jurors admitted having a biased or fixed opinion about the case. The record supports the latter statement.

The well established law in Georgia is that "a motion for a change of venue addresses itself to the sound discretion of the trial judge, and that discretion will not be disturbed on appeal unless it can be shown that there was an abuse of this discretion." *Coleman v. State,* 237 Ga. 84, 90 (226 SE2d 911) (1976), cert. den. 431 U. S. 909. The test is whether the prospective jurors have formed fixed opinions as to appellant's guilt or innocence based upon reports in the media. Id. at 91.

Even though appellant states that none of the jurors admitted having a fixed opinion about his guilt or innocence, he argues that it is unusual for a juror to admit such a bias either out of legal ignorance or from shyness. He goes on to argue that some prospective jurors discussed the case, and therefore, they must have had an opinion about it. This court disagrees with these arguments. First, several jurors readily admitted having read newspaper accounts of the incident. But when asked by defense counsel, these jurors stated they had formed no opinion about appellant's guilt or innocence. Furthermore, they stated that they remained fair and impartial and would base their decision on the evidence presented at trial. Second, it is completely illogical to assume that because someone discussed the case they had formed a fixed opinion about it. "The appellant has presented no evidence of fixed opinions on the part of the . . . jurors as to

his guilt or innocence, and a reading of the record of the voir dire examination does not show that any of the jurors summoned to try the case had been prejudiced by the [pretrial publicity]." *Potts v. State,* 241 Ga. 67, 76 (243 SE2d 510) (1978). There was no abuse of discretion by the trial court in overruling appellant's motion for a change of venue.

The law does not set an impossible standard on the state to obtain jurors completely free "of the mere existence of any preconceived notion as to the guilt or innocence of an accused . . . It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." Irvin v. Dowd, 366 U. S. 717, 723 (81 SC 1639, 6 LE2d 751) (1961). "Qualified jurors need not . . . be totally ignorant of the facts and issues involved." Murphy v. Florida, 421 U. S. 794, 799 (95 SC 2031, 44 LE2d 589) (1975). A review of the voir dire of the jurors shows that these standards were met. Therefore, there is no merit to appellant's third enumeration of error. Accord, *Jarrell v. State,* 234 Ga. 410 (216 SE2d 258) (1975), cert. den. 428 U. S. 910, and *Allen v. State,* 235 Ga. 709 (221 SE2d 405) (1975).

3. Appellant's fourth enumeration of error asserts that the trial court erred in refusing to compel the state to allow appellant's counsel the opportunity to read notes taken during the appellant's interrogation which could have been favorable to him. The notes in question were made by a GBI agent while interviewing appellant during the investigation of the crime. These handwritten notes were later reduced to a standard typed report which the agent dictated based upon her notes as well as what she remembered appellant stating during the interview. Appellant filed a Brady motion to compel the state to disclose all exculpatory information and "any and all tape recordings and stenographic transcriptions of admissions, confessions, and statements of the defendant . . ." which were made to the GBI or other law enforcement agency. The trial court granted appellant's disclosure motion, and the typewritten report was furnished to appellant's counsel. At trial, the court ruled that the disclosure order did not apply to the agent's handwritten notes which were not in the district attorney's files. Rather, the disclosure

order only required the district attorney to furnish the final typewritten GBI report to appellant. In essence, the court ruled that the district attorney had complied with the disclosure order by furnishing appellant with the same report which the GBI had given to the district attorney.

Appellant claims these notes could have been exculpatory, and that he could not determine if the final typewritten report was what he had stated to the GBI agent. Since the report was prepared from both the agent's notes and her memory, appellant argues, the typed report could well be "what the G.B.I. agent wanted him to say" and not what he actually said. In response to this argument, we note that appellant had ample opportunity at trial to cross examine the GBI agent regarding the accuracy of the typed report. Furthermore, appellant himself testified at the trial, and he could have refuted any erroneous testimony by the GBI agent. However, he did not do so.

Appellant claims that the requirements of Brady v. Maryland, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963), were not met because the prosecution suppressed evidence favorable to the accused and material to appellant's guilt. This argument fails for several reasons. Primarily, appellant's invocation of the Brady rule is inappropriate under the facts of this case. Brady applies to "the discovery, after trial, of information which had been known to the prosecution but unknown to the defense." United States v. Agurs, 427 U. S. 97, 103 (96 SC 2392, 49 LE2d 342) (1976). Here appellant's own statements as set out in the GBI agent's notes were the subject of his Brady motion. Thus, this was not information unknown to the defense and subject to discovery under Brady.

It is also well established that there is no Georgia procedure requiring the district attorney to open his files to the accused, "nor is the accused entitled as a matter of right to receive copies of police reports and investigation reports made in the course of preparing the case against the [accused]." *Henderson v. State,* 227 Ga. 68, 77 (179 SE2d 76) (1970); *Stevens v. State,* 242 Ga. 34 (247 SE2d 838) (1978); *Nations v. State,* 234 Ga. 709 (217 SE2d 287) (1975). Moreover, the prosecution has not suppressed any

evidence. The transcript of appellant's statement as prepared by the GBI agent was given to appellant's counsel by the prosecution. Defense counsel was given all the evidence regarding appellant's statements to the GBI that was in the district attorney's possession. Under our law, the state is not required to investigate the case for the defense. *Hicks v. State,* 232 Ga. 393 (207 SE2d 30) (1974). "We know of no constitutional requirement that the prosecution make a complete and detailed accounting to the defense of all police investigatory work on a case." Moore v. Illinois, 408 U. S. 786, 795 (92 SC 2562, 33 LE2d 706) (1972). "The prosecution does not 'suppress' evidence by refusing to conduct a search for it, even though the evidence may be more accessible to the state than to the defense." 232 Ga. at 395.

In addition, the appellant has failed to show how the trial court's refusal to order that the GBI agent's notes be given to him has materially affected his case. A showing of materiality is a prerequisite to review of appellant's suppression claim. Brady, Moore, and *Stevens,* supra. Appellant was given the final typed report as prepared by the GBI agent. Appellant was permitted the opportunity to cross examine the agent at trial. The agent's testimony concerning appellant's statements was that appellant said he attacked the victim with his fists when he saw the victim fondling his daughter Lisa; that he thought the victim had a knife; that he might have picked up a stick after the fight with the victim or, perhaps, he did hit the victim with a stick; and that his daughters joined in the attack on the victim. This testimony was quite similar to appellant's testimony at trial. No material prejudice to the appellant occurred because of the mere possibility that the agent's notes might have been different from the final typed report, especially when the substance of the agent's testimony was congruous with that of appellant. The appellant has not shown that "the denial of these [notes] to him so impaired his defense that he was denied a fair trial within the meaning of the Brady rule." *Wisdom v. State,* 234 Ga. 650, 652 (217 SE2d 244) (1975). "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the

constitutional sense. . . If there is no reasonable doubt about guilt, whether or not the additional evidence is considered, there is no justification for a new trial." Agurs, supra, at 109, 112; see *Lundy v. State,* 139 Ga. App. 536 (228 SE2d 717) (1976).

4. Appellant's fifth enumeration of error asserts that the trial court erred in refusing to declare a mistrial when an adverse witness mentioned on direct examination that appellant had been in prison and that he had committed previous crimes which were not a part of this trial. In responding to a question from the prosecutor, Mrs. Baker testified that appellant would not let her speak to Barbara on the phone while appellant, Barbara, and Lisa were out of town traveling in his truck. Mrs. Baker testified that when she asked the appellant why he would not let her talk with Barbara, he said, "Because you kept me in prison when I was in Columbus." Defense counsel objected to this remark, and the court instructed the jury to disregard completely Mrs. Baker's statement. A little later in her testimony, Mrs. Baker mentioned that appellant beat her with a rope across her back upon his return from the trip with the children. She testified that appellant warned her not to ask the children to do anything and not to say anything to his children. Defense counsel objected to this testimony, and the trial court instructed the jury to disregard this testimony except for the purpose of showing appellant's intent, motive, or state of mind in relation to the offenses charged in the indictment.

A decision to grant a motion for mistrial lies within the sound discretion of the trial judge. His judgment will not be overturned on appeal without a showing of abuse of this discretion. *Sims v. State,* 243 Ga. 83 (252 SE2d 501) (1979). In regard to the reference to appellant's having been in prison, we find no error in the judge's refusal to declare a mistrial. The trial judge immediately instructed the jury to disregard Mrs. Baker's testimony. This instruction was sufficient to insure appellant a fair trial. "[W]here proper instructions are given to disregard . . . references to past arrest or convictions, it is not error to overrule the motion for mistrial." *Googe v. State,* 237 Ga. 175 (227 SE2d 51) (1975). See *Woods v. State,* 233 Ga. 495 (212 SE2d 322) (1975), where a witness for the state

testified that she had met the defendant in prison, and no mistrial was declared; *Lynch v. State,* 234 Ga. 466 (216 SE2d 307) (1975); *Holcomb v. State,* 130 Ga. App. 154 (202 SE2d 529) (1973).

In regard to Mrs. Baker's second statement that the appellant had previously beaten her, we find no error requiring reversal of the trial court. First, even though this testimony relates to criminal activity that the appellant was not indicted for, the trial judge gave curative instructions and told the jury not to consider this testimony as proving any of the indicted offenses. *Redfield v. State,* 240 Ga. 460 (241 SE2d 217) (1978). Second, as far as showing state of mind, intent, or motive the testimony was admissible. Here the testimony concerned a prior effort by the accused to commit the same crime upon the victim for which he is now charged. This rationale is a long recognized exception to the general rule that evidence of prior crimes is inadmissible. *Cawthon v. State,* 119 Ga. 395 (46 SE 897) (1903); *Cox v. State,* 165 Ga. 145 (139 SE 861) (1927); *Natson v. State,* 242 Ga. 618 (250 SE2d 420) (1978), cert. den. —- U. S. —-.

5. Appellant's sixth enumeration of error contends the trial court erred in refusing to grant a directed verdict of not guilty as to the two counts of incest. Appellant asserts that there was no corroboration of either act of incest, nor any proof of penetration and sexual intercourse other than the daughters' statements. In addition, appellant's eighth enumeration of error asserts that the trial court erred in failing to charge the jury on the corroboration required to warrant a conviction for incest.

Appellant's daughter Lisa testified that he "had sex" with her and Barbara numerous times while traveling in the truck. She also testified that she "had sex" with her father at home in her room. Barbara testified that she "had sex" with the appellant. She also said that the appellant "started doing it again" after they moved to the trailer. Barbara testified that she saw the appellant "have sex" with Lisa in the new trailer and on the trip. These statements provide sufficient evidence to prove the acts of sexual intercourse and incest to the jury's satisfaction. *Johnson v. State,* 149 Ga. App. 544 (254 SE2d 757) (1979);

*Ramsey v. State,* 145 Ga. App. 60 (243 SE2d 555) (1978); revd. on other grounds 241 Ga. 426 (246 SE2d 190); *Wynne v. State,* 139 Ga. App. 355 (228 SE2d 378) (1976). Based on this evidence, a rational trier of fact could find the appellant guilty beyond a reasonable doubt. Jackson v. Virginia, supra.

As far as appellant's assertion that there must be corroboration of the incestuous acts, this court holds that no corroboration is required. The case of *Neel v. State,* 140 Ga. App. 691 (231 SE2d 394) (1976), is overruled insofar as it holds that a conviction for incest must be supported by corroborating evidence and that a jury charge on the corroboration requirement must be given even if not requested. Corroboration is not required under the plain language of our incest statute. Code Ann. § 26-2006. Previous cases, however, have engrafted such a requirement on the statute. See *Neel,* supra, and *Wilkins v. State,* 96 Ga. App.841 (3) (101 SE2d 912) (1958). These cases, and others, were based on the proposition that under our previous statutes, which prohibited incestuous adultery or incestuous fornication (former Code § 26-5701), incest was a felony and the female was considered an accomplice; therefore, her uncorroborated testimony was insufficient to sustain a conviction. *Yother v. State,* 120 Ga. 204 (47 SE 555) (1904); *Durden v. State,* 120 Ga. 860 (48 SE 315) (1904). While some cases set forth the distinction that it was only when a woman "knowingly and wilfully" consented to the incestuous act that she was considered an accomplice, *Solomon v. State,* 113 Ga. 192 (38 SE 332) (1901), this distinction apparently was lost when the present rule emerged that in *any* trial for incest *the female is an accomplice* whose testimony must be corroborated. See, e.g., *Taylor v. State,* 110 Ga. 150 (35 SE 161) (1899); *Jennings v. State,* 13 Ga. App. 678, 680 (79 SE 756) (1913). This rule is based on one of our rules of evidence which states in pertinent part that: "testimony of a single witness is generally sufficient to establish a fact. Exceptions to this rule are made in specified cases; such as, . . . in any case of felony where the only witness is an accomplice . . ." Code Ann. § 38-121.

In reviewing the sexual offenses listed in the present Code, it is noteworthy that the General Assembly has

removed the corroboration requirement which was specifically a part of the previous rape statute. Code § 26-2001 (Ga. L. 1978, p. 3 amending Ga. L. 1968, pp. 1249, 1299). Also noteworthy is the fact that no corroboration has been required for a conviction of child molestation under Code Ann. § 26-2019. *Young v. State,* 125 Ga. App. 204 (186 SE2d 805) (1971); *Page v. State,* 120 Ga. App. 709 (172 SE2d 207) (1969). Finally, when our Criminal Code was revised in 1968, the Criminal Law Study Committee expressed in a foreword the intended effect of adopting the new law. They state that "[i]t was a fundamental rule of the committee to retain as many laws as possible, with the interpretations of the courts carefully considered . . . [T]he substance of [the criminal laws] was retained where-ever possible." Code Ann., Title 26, p. 5. If the General Assembly had wished to make corroboration as enunciated by the courts a requirement of the incest statute, presumably it would have done so in 1968.

It appears that our early cases applied Code § 38-121 too broadly to sexual crimes. These cases required corroboration of the female victim's testimony with little regard to whether she was actually an accomplice. In recent years, the trend elsewhere has been to eliminate the corroboration requirement. State v. Hesse, 281 NW2d 491 (Minn. 1979). For example, South Carolina has completely eliminated the corroboration requirement in prosecutions under its statutes dealing with criminal sexual conduct. S. C. Code § 16-3-657 (1976). See In the Matter of Lawson, 257 SE2d 745 (S. C. 1979). This court agrees with this trend, and believes our previous holdings to the contrary should be overruled. A conviction for incest may be based upon the uncorroborated testimony of the prosecuting witness, if the testimony is sufficient to convince a rational trier of fact of the defendant's guilt beyond a reasonable doubt. Mahoney v. State, 388 NE2d 591 (Ind. 1979); Woods v. State, 235 NE2d 479 (Ind. 1968). See Jackson v. Virginia, supra. The purposes of the earlier corroboration rule are more than adequately met by the requirement of a jury trial and by the trial court's and appellate courts' power to provide relief where the evidence is legally insufficient. State v. Ani, 257 NW2d 699 (Minn. 1977). As Wigmore said some time ago, "a rule

of law requiring corroboration has probably little actual influence upon the jurors' minds over and above that ordinary caution and suspicion which would naturally suggest itself [in cases such as these] . . ." VII Wigmore on Evidence 342, § 2061 (3d Ed. 1940). See generally Note, 81 Yale L. J. 1365 (1972).

Since no corroboration of the daughters' testimony is required, appellant's eighth enumeration of error that the trial court erred in failing to charge on corroboration is without merit.

6. Appellant's seventh enumeration of error asserts that the trial court erred in refusing to grant a directed verdict on the aggravated battery count because fracturing a jaw bone does not constitute aggravated battery. The evidence in this case demonstrates serious temporary disfigurement to the victim and loss of use of her jaw until it healed. The jaw had to be immobilized by wiring the teeth together. Under the statute, Code Ann. § 26-1305, and our cases, this was sufficient injury to warrant a conviction on aggravated battery. At a minimum a member or part of the victim's body was rendered useless and seriously disfigured. *Mitchell v. State,* 238 Ga. 167 (231 SE2d 773) (1977); *Penland v. State,* 229 Ga. 256 (190 SE2d 900) (1972).

7. Appellant's ninth enumeration of error asserts the trial court erred in failing to charge his requested charge on the presumption of appellant's innocence. The trial judge did, however, charge the jury on appellant's innocence, albeit not as specifically requested. "It is no longer necessary to give the exact language of a request to charge when the same principles are fairly given to the jury in the general charge . . ." *Burnett v. State,* 240 Ga. 681, 687 (242 SE2d 79) (1978). The charge given here stated that the defendant is presumed innocent and stands before the jury as an innocent man until he is proven guilty to the satisfaction of the jury. This was substantially the same charge as appellant requested. There is no merit to this enumeration of error.

8. Appellant's tenth enumeration of error contends that the trial court erred in charging the jury on the law of confessions. Appellant claims that his statements to the GBI agent were not a confession, but were statements of

legal excuse or justification. Appellant cites *Logue v. State,* 149 Ga. App. 797 (256 SE2d 31) (1979) for the proposition that a jury charge on the law of confessions is clearly reversible error where the word "confession" is used in the jury charge, when by legal definition no confession was made. See *Johnson v. State,* 242 Ga. 822 (251 SE2d 563) (1979) (Hill, J., concurring); *Owens v. State,* 120 Ga. 296 (48 SE 21) (1904); *Covington v. State,* 79 Ga. 687 (7 SE 153) (1887). While it is often difficult to determine whether or not a defendant has confessed, thus authorizing a jury charge on "confession," 242 Ga. at 824, it is clear that "[a] charge upon confessions, where there is no evidence to support such a charge" would be error. 120 Ga. at 300.

In this case the appellant was indicted and tried for five crimes. In his brief he argues that his statements to the GBI agent (see Division 3) were not a confession of the crime of murder, because these statements offered a legal excuse or justification for his actions. Pretermitting a review of this argument, we find no error in the trial judge's charge on the law of confessions. The appellant did admit to the GBI agent that he had had "a little rumble" with his wife on the day before the murder, and that "he had had a fight with his wife the day before" the murder. Appellant also indicated that his wife had to remain in bed due to their fight. The reason appellant gave for having this fight was that Mrs. Baker "was getting money from men for letting them have sex with the girls." According to the agent's testimony, Mrs. Baker later told the agent that the appellant had beaten her and threatened her life the day before the murder, thus verifying appellant's admission.

Appellant was indicted and tried on the battery count. Certainly his statements to the GBI agent amounted to a confession that he committed this crime. This is not a case where there is no evidence to support a charge on confessions. *Owens,* supra. Therefore, the trial judge was authorized to charge the jury on the law of confessions, indicating the necessity that the jury must decide, before considering appellant's admissions as evidence, that the admissions were voluntarily made and that he had waived his constitutional right to remain

silent.

9. Appellant's eleventh enumeration of error contends that the court erred in charging the jury as to the form of the verdict. The alleged error is that no specific form was given the jury for a not guilty verdict, but specific instructions were given for the form of a guilty verdict. After reviewing all of the instructions to the jury, this court finds that this enumeration is totally without merit. The judge instructed the jury on each count as to the form of both a guilty and a not guilty verdict.

*Judgment affirmed. All the Justices concur, except Bowles, J., who concurs in the judgment only.*

ARGUED JANUARY 22, 1980 — DECIDED APRIL 22, 1980.

*Donald W. Huskins,* for appellant.
Lilton Baker, *pro se.*
*Joe Briley, District Attorney, Arthur K. Bolton, Attorney General, W. Davis Hewitt, Assistant Attorney General,* for appellee.