## 73380. GISH v. THE STATE.
(352 SE2d 800)

BIRDSONG, Chief Judge.

James Gish was convicted of incestuous conduct with his teen-aged stepdaughter and sentenced to 20 years. He brings this appeal

enumerating errors based upon a denial of a motion for a directed verdict of acquittal, improper admission into evidence of reference to prior misconduct and the general grounds. However, in his brief, he addresses only one issue, the question of affinity so as to make him amenable to punishment for carnal knowledge of the female involved. *Held*:

The facts show that Gish married in 1972. At the time of the marriage, Gish's wife was the mother of a 6-year-old female child. Gish accepted the child into his home and afforded full support and supervision of the child. In 1976, the mother was killed in an equestrian accident. After the natural mother's death, an attempt was made to divest Gish of the custody of the 9-year-old girl. Gish successfully defended the attempt to divest him of custody of the child and he was awarded custody of the girl, obviously in the capacity of stepparent-stepchild (there being no other apparent reason or basis for his entitlement to custody). Evidence also indicated that Gish may have abused the child prior to the mother's death but that incestuous conduct did not begin until long after the natural mother's death, perhaps as late as September 1983. The incestuous relationship once instituted persisted as a frequent occurrence until the child and Gish were separated upon this criminal accusation. Gish now contends that upon the natural mother's death in 1976, any legal relationship between himself and the female child terminated. Though he does not argue that his conduct is morally excusable, he argues that in the absence of affinity the crime of incest is not legally commitable.

There is a clear and just moral difference between sexual intercourse of persons related by consanguinity (a blood relationship) and that of persons related only by affinity (based upon marriage). See *Henderson v. State*, 26 Ala. App. 263 (157 S 884); *State v. Tucker*, 174 Ind. 715 (93 NE 3). However, it equally is clear that sexual intercourse between a stepfather and his stepdaughter is punishable as incest as being within the requisite degree of affinity. OCGA § 16-6-22 (a) (1); *Lipham v. State*, 125 Ga. 52, 54 (2) (53 SE 817); *Jennings v. State*, 13 Ga. App. 678 (79 SE 756); *Nephew v. State*, 5 Ga. App. 841, 843 (2) (63 SE 930); *State v. Spridgen*, 241 Iowa 828 (43 NW2d 192). (We observe that except for three cases reported in Georgia involving stepdaughters, all other traceable reported cases of incest in this state involve sexual relations with a natural daughter and thus involved considerations of consanguinity rather than affinity.)

The relationship of affinity between the parties must exist at the time of sexual intercourse in order to render the conduct incestuous and if the relationship has ceased to exist before the act takes place, then the act of sexual intercourse is not incestuous, however offensive it may appear to good morality, nor is it otherwise punishable as a crime. See *Tagert v. State*, 143 Ala. 88 (39 S 293).

As a general rule, affinity ceases upon the death of the blood relative through whom the relationship of affinity was created. See *State v. Shaw*, 25 N.C. 532; *Stanford v. State*, 42 Tex. Cr. 343 (60 SW 253). In the absence of a statutory prohibition after such a death, it is not incest for a man to have unlawful intercourse with his deceased (former) wife's daughter. See *Landin v. State*, 101 Tex. Cr. 373 (275 SW 1012); *Stanford v. State*, supra.

Nevertheless, we hold that because of the creation and continuation of the familial relationship between Gish and the victim who resided in his home pursuant to a court order personally sought by Gish, that an actual affinity was perpetuated as a continuation of, and persisted independently of, the affinity which originally arose from the marriage by the appellant with his stepdaughter's natural mother and which continued beyond the death of the natural mother.

Prior to the death of the mother, it is indisputable that the female victim was in the legal status of stepdaughter to her mother's husband. It equally is clear that appellant accepted the girl into his home as his dependent and cared for her as his daughter. After the mother's death when the status should have terminated, he successfully resisted an attempt to remove her from his custody and maintained custody and control and a corresponding duty of care for the child in what could only have been a continuing status as stepdaughter-stepfather relationship as there appears no other relationship that would have justified her continuance in his home in his custody. Thus we conclude that the status as stepdaughter created by marriage was perpetuated and confirmed by the order of court granting Gish custody of his *stepdaughter* after the death of the girl's mother. Logic compels the conclusion that a stepparent who voluntarily receives a stepchild into the family and treats the child as a family member stands in the place of the natural parent. *Dodd v. United States*, 76 FSupp. 991. These reciprocal rights, duties and obligations of parent to child and child to parent subsist (see *Brummitt v. Commonwealth*, 357 SW2d 37) and continue as long as the relationship continues. See *Doughty v. Thornton*, 151 Va. 785 (145 SE 249). As was said by our Supreme Court: "It is for the protection of the most important unit of society — the family, that incest is pronounced a crime. If a man marry the mother of [even] an illegitimate daughter, and take the daughter into his care and custody, he becomes charged with a duty towards her. His disregard of morality and decency in having sexual intercourse with her is a crime transcending a mere misdemeanor. The act has all the elements which constitute incest. As incest it should be punished." *Lipham v. State*, supra, pp. 54-55. For us to hold otherwise would be to ignore the reality that a person who has assumed the status of "in loco parentis" by choice and court order (thus removing any freedom of choice by the minor involved of a

choice of home) may nevertheless avoid that responsibility (and its consequences) simply by renouncing it unilaterally. The sanctity of the family is not so easily shucked. This record does not reflect that the status of custody of his stepdaughter has ever been relinquished by Gish. Consequently, we conclude the conviction of Gish of the crime of incest not only was justified but legally correct.

The other enumerations of error are not considered in the brief of counsel nor are we made aware in what manner Gish considers error to have been committed in the court below. Where errors alleged to have been made in the trial court are not presented to us by brief nor argument before this court in a timely and appropriate manner (i.e., in accordance with the rules of this court), we will, indeed we must, consider those enumerations as having been abandoned and as presenting nothing for review. *Ridley v. State*, 141 Ga. App. 854, 855 (234 SE2d 688); *Carney v. State*, 134 Ga. App. 816 (3) (216 SE2d 617).

*Judgment affirmed. Banke, P. J., and Sognier, J., concur.*

DECIDED JANUARY 7, 1987.

*John W. Davis*, for appellant.
*Glenn Thomas, Jr., District Attorney, John B. Johnson III, Assistant District Attorney*, for appellee.