# E. L. Dominick, Jr.

## v.

# Marion M. Vassar

Record No. 850275

April 22, 1988

Present: All the Justices

*Paul M. Lipkin (Goldblatt, Lipkin, Cohen, Anderson, Jenkins & Legum, P.C.*, on brief), for appellant.
*Grover C. Wright* for appellee.

STEPHENSON, J., delivered the opinion of the Court.

E. L. Dominick, Jr., sued Marion M. Vassar (Mrs. Vassar), individually and as executrix of the estate of John Vassar, for specific performance of an agreement to purchase shares of stock in a closely held corporation. After an *ore tenus* hearing, the trial court refused to grant specific performance on the ground that Dominick was estopped from asserting his rights under the agreement. In this appeal, Dominick contends that the trial court erred in denying specific performance.

The facts are undisputed. In 1966 Dominick and John Vassar, Mrs. Vassar's husband, organized Tidewater Auto Parts, Incorporated (Tidewater). Dominick and John Vassar each owned 112 shares of common stock in the corporation. Mrs. Vassar, who held no stock, was elected a director and the secretary-treasurer of the corporation. Both the minutes of the organizational meeting of Tidewater and its by-laws provided that if either stockholder sought to dispose of his shares, the other stockholder would have the right of first refusal.

On September 5, 1966, the two stockholders entered into a stock option purchase agreement (the agreement) which provided that, upon the death of either party, the surviving party would have "an exclusive and binding option to purchase from the heirs, devisees, assigns, or estate of [the] deceased party all the shares of stock which [the] deceased party owned in [Tidewater] within ninety (90) days following the date of death of [the] deceased stockholder." The agreement further provided that if the option was exercised, the purchase price would be the book value of the stock on the date the option was exercised. The agreement required the surviving stockholder to exercise the option by giving written notice to the estate of the decedent and by tendering the purchase price in cash or certified check within 90 days after the notice.

When the two stockholders executed the agreement in 1966, Tidewater owned few assets. By the time John Vassar died on September 15, 1983, however, the corporation had acquired substantial assets. Despite the passage of time and Tidewater's acquisition of additional assets, the agreement was never changed.

On October 4, 1983, Mrs. Vassar had her husband's will probated, and she qualified as executrix of his estate. She was the sole devisee and legatee in his will.

On October 10, 1983, a Tidewater stockholders' meeting was held which was attended by Dominick and by Mrs. Vassar, acting in her capacity as executrix. At this meeting, Mrs. Vassar was elected a director of Tidewater, along with Dominick and a third party. During the meeting, Mrs. Vassar, as executrix, signed and surrendered two stock certificates aggregating the 112 shares that had been issued to her husband. Neither of these certificates contained any restrictions on its face that would limit the right of transfer.

Upon surrender of the certificates, a new certificate for 112 shares was issued to Mrs. Vassar in her individual capacity. The new stock certificate was executed by Dominick as treasurer and by Mrs. Vassar as president.[1] No mention was made of the option agreement at the time this certificate was issued.[2]

Immediately thereafter, Mrs. Vassar, who had been retired from work, became a full-time, salaried employee of Tidewater. Additionally, she and Dominick endeavored, albeit unsuccessfully, to sell the business and retain Tidewater's real estate for rental purposes.

On November 21, 1983, Dominick gave written notice to the "Estate of John A. Vassar, deceased c/o Marion M. Vassar" that he "hereby exercise[s]" the option to purchase the shares owned by John Vassar at the time of his death in accordance with the agreement. The book value of the corporation on that date was $288,059.

On February 14, 1984, Dominick tendered payment for the stock to Mrs. Vassar by a certified check in the amount of $144,029.50, the book value of the estate's interest[3] in Tidewater. Mrs. Vassar rejected the tender on February 21, 1984, and this litigation followed.

After considering these undisputed facts, the trial court refused to specifically enforce the agreement. The court opined that Dominick was "barred by estoppel from asserting his right of option to purchase pursuant to the [a]greement . . . against [Mrs. Vassar]."

■ "Elements necessary to establish equitable estoppel, absent a showing of fraud and deception, are a representation, reliance, a change of position, and detriment." *Lataif* v. *Com. Indus. Const., Inc.*, 223 Va. 59, 63, 286 S.E.2d 159, 161 (1982) (quoting *T . . . v. T . . .*, 216 Va. 867, 873, 224 S.E.2d 148, 152 (1976)). Moreover, the party who relies upon equitable estoppel must prove each element by " 'clear, precise and unequivocal evidence.' " *Employers Ins. Co.* v. *Great American*, 214 Va. 410, 415, 200 S.E.2d 560,

---

[1] Mrs. Vassar was actually elected president of Tidewater at a director's meeting held the following day.

[2] In its letter opinion, the trial court stated that "[t]here has been no evidence introduced that either party lacked knowledge of the existence of the . . . [a]greement at the time of the reissuance of the stock to [Mrs. Vassar]."

[3] Tidewater's real estate had a depreciated book value of $76,539. Evidence was presented, however, indicating that the fair market value of the real estate was $273,200.

564 (1973) (quoting *John Hancock Mutual* v. *Virginia Nat'l Bank*, 212 Va. 31, 33, 181 S.E.2d 618, 620 (1971)).

The trial court did not address specifically the elements of equitable estoppel. The court simply found that Dominick's actions, *viz*, transferring the stock to Mrs. Vassar without restrictions and joining with her in seeking a sale of the business, "were entirely inconsistent with one who intended to give purpose and meaning to the [agreement]."

As previously noted, the agreement was binding upon John Vassar's "heirs, devisees, assigns [and] estate" for 90 days following the date of his death. In the meantime, Mrs. Vassar was entitled to have the stock issued to her, either as executrix (the legal title) or individually (the equitable title). Moreover, as a stockholder she was entitled to all the rights of any other stockholder, including the right to hold office in the corporation and to offer to sell her stock. In addition, no evidence was presented to show that either party lacked knowledge of the option agreement when the new certificate was issued to Mrs. Vassar. While it may nevertheless have been appropriate for Dominick to apprise Mrs. Vassar that he had a 90-day option to purchase her stock, he was under no duty to do so. "Silence or inaction in the absence of a duty to speak does not create a waiver or estoppel." *Maxey* v. *John Doe and GEICO*, 217 Va. 22, 26, 225 S.E.2d 359, 362 (1976). Thus, Dominick's conduct did not amount to a representation that he had abandoned his rights under the agreement.

Moreover, no evidence was adduced tending to show that Mrs. Vassar relied upon Dominick's conduct or changed her position to her detriment. As John Vassar's sole legatee, Mrs. Vassar was entitled to the stock, subject to the terms of the agreement. Nothing in the record indicates how Dominick's conduct caused her to change her position with resulting injury. *See Sutton Co.* v. *Wise Contracting Co.*, 197 Va. 705, 710, 90 S.E.2d 805, 808-09 (1956). We hold, therefore, that the trial court erred in applying the doctrine of equitable estoppel to the facts of the present case.

Although the trial court rested its decision upon equitable estoppel, Mrs. Vassar further contends that the trial court, under the facts presented, properly denied specific performance. She asserts that specific performance can be decreed only so long as "nothing [in the agreement] indicate[s] that its enforcement would be inequitable" to her.

██ Specific performance is not a remedy of right but one that rests within the sound discretion of the trial court. *E.g., Haythe* v. *May*, 223 Va. 359, 361, 288 S.E.2d 487, 488 (1982). However, a court is not at liberty to rewrite a contract simply because the contract may appear to reach an unfair result. *See Verling* v. *Quarles*, 217 Va. 188, 191, 227 S.E.2d 684, 686 (1976). Moreover, in a proper case, a court may specifically enforce a contract to deliver stock where "the stock is not readily purchasable in the market and its pecuniary value is uncertain and not easily ascertainable." *Fanney* v. *Investment Corporation*, 200 Va. 642, 652, 107 S.E.2d 414, 421 (1959); *accord Kennerly* v. *Col. Chem. Corp.*, 137 Va. 240, 245, 119 S.E. 265, 267 (1923); *Watkins* v. *Robertson*, 105 Va. 269, 280, 54 S.E. 33, 37 (1906).

██ In the present case, two equal owners of stock in a closely held corporation agreed that the surviving stockholder would have the right to purchase the deceased stockholder's shares at book value within a specified time period. The agreement is clear and valid, and specific performance is the only complete and adequate remedy available to Dominick. Thus, we hold that the trial court erred in refusing to decree specific performance.

Accordingly, we will reverse the judgment of the trial court and remand the cause for the entry of a decree consistent with this opinion.

*Reversed and remanded.*