# CIRCUIT COURT OF THE CITY OF RICHMOND

Bank of America, N.A.,
and William C. Day

v.

Malcolm Bradley et al.

January 4, 2001

Case No. HN-1602-4

BY JUDGE RANDALL G. JOHNSON

This is a suit for advice and guidance brought by Bank of America, N.A., formerly NationsBank, and William C. Day, co-executors and co-trustees ("executors") under the will of Clinton Webb, IV, deceased. At issue is whether Webb's estate must honor an alleged agreement by Webb to allow Malcolm Bradley to purchase Webb's Virginia Beach condominium for $67,000. An evidentiary hearing was held on December 15.

Webb died a resident of Richmond on April 5, 2000. He left a will dated November 25, 1998, and a codicil dated October 6, 1999. The will and codicil were admitted to probate by the clerk of this court on April 19, 2000. Webb's estate includes a condominium known as Club Studio 16 at the Oceans located in Virginia Beach. It was appraised by a professional appraiser as of the date of Webb's death at $115,000.

In a letter dated October 3, 1996, to "NationsBank and Dr. William C. Day, Executors U/W Clinton Webb," Webb wrote the following:

At the time of my death with reference to Club Studio 16 at the Oceans, it is my wish that after it has been appraised it be offered to J. Hylton and Janet Wilton first refusal for purchase at the appraised value.

In a letter to the same addressees dated July 15, 1999, Webb wrote:

> At my death or disability I grant to Malcolm Bradley title to Club Studio 16 at the Oceans, Virginia Beach, Virginia, second floor oceanfront, at its cost to me of $67,000.
>
> I cancel any previous commitment that I may have made.

In a separate letter dated July 15, 1999, to Malcolm Bradley, Webb wrote:

> As agreed I am enclosing an agreement granting you the right to purchase Club Studio 16 at a cost of $67,000.

And in yet another letter dated July 15, 1999, Webb wrote to "Mr. T. Cary Gresham, Senior Vice President, NationsBank:"

> As you will see I have renegotiated the sale of Club Studio 16 at a price of $67,000.

All of the above letters were typewritten and signed by Webb. As noted earlier, Webb died on April 5, 2000.

By letter dated April 20, 2000, Bradley informed the executors and trustees of his intent to purchase the condominium for $67,000 "as granted in Clinton Webb's letter of July 15, 1999." In April or May 2000, Webb's July 15, 1999, letter to NationsBank and Day was submitted to the clerk of this court for probate as an after-discovered codicil to the will. On May 2, 2000, the clerk rejected the letter as a testamentary document due to lack of proper execution; specifically, that it was not witnessed. The clerk's rejection was not appealed to the court. The executors have now received an offer from a third party to purchase the condominium for $150,000, which is $35,000 more than its appraised value and $83,000 more than is being offered by Bradley.

Named as defendants in the suit are Bradley, J. Hylton Wilton, who was referred to in Webb's October 3, 1996, letter as "J. Hylton," Janet Wilton, and all of the beneficiaries under the will. Bradley has filed an answer to the bill of complaint and participated, personally and by counsel, in the evidentiary hearing. Each of the other defendants, including Mr. and Mrs. Wilton, has signed a written "Acceptance of Service of Process and Waiver of Notice," but none has responded to the bill of complaint or otherwise appeared in the action.

At the hearing, Bradley testified that he and Webb had been close friends for many years. He often visited Webb at the Virginia Beach condominium.

He also testified that he is in the antiques business and that he owned a painting of a naval officer that Webb admired. In fact, Webb repeatedly and persistently told Bradley that he wanted to buy the painting, but Bradley just as repeatedly and just as persistently told Webb that the painting was not for sale. At one point, Bradley offered to let Webb hang the picture in the condominium with the understanding that it still belonged to Bradley, but Webb continued to press Bradley for an outright sale. Again, Bradley refused. Webb also knew that Bradley admired the condominium and on at least one occasion, according to Bradley, offered to give the condominium to Bradley in exchange for Bradley's allowing him to buy the painting. Bradley refused the offer of a gift, but he and Webb later agreed that Bradley would be allowed to purchase the condominium at Webb's death or disability for $67,000, which is what Webb said he paid for it, in exchange for Webb's purchase of the painting for $2,800. Deborah McCauley, Webb's nursing assistant, testified that Webb told her he wanted Bradley "to get the property in Virginia Beach," or words to that effect. McCauley also testified, as did several other witnesses, including Bonnie Noble, Webb's secretary who typed each of Webb's letters referred to above, that Webb was completely competent until the day he died. No one testified that he was not competent. After Webb's death, the painting was appraised at $875.

Based on the above, it is obvious that it was Webb's wish that Bradley be allowed to purchase the condominium for $67,000. Not only did he tell that to Bradley and McCauley, he told that to his executors, the very people who would administer his estate after his death. It is not known why he did not formally execute a new will or codicil to give full and unquestioned legal effect to his wish. As the executors point out, he certainly knew how to execute a will and codicil. His intent, however, was clear. The question is whether his intent has legal effect. The court holds that it does.

Neither the executors nor Bradley argues that any of the letters written by Webb and referred to above are wills or codicils. They are not. As the clerk held with regard to the July 15, 1999, letter to the executors, none of those letters was executed with the formality necessary to create a testamentary document. If Webb's intent is to be given effect, it must be through an agreement made by Webb and Bradley before Webb died. It is clear that such an agreement was made.

Bradley testified that Webb very much wanted Bradley's painting of a naval officer. He wanted the painting so much, in fact, that he offered to give his condominium to Bradley just for the privilege of buying it. With the painting having an appraised value of $875 and the condominium having an appraised value of $115,000, such an offer is highly unusual and would

normally raise serious questions about the offeror's competence. Value, however, is often in the eye of the beholder, and all of the witnesses who knew Webb were absolutely certain that he was competent. The court finds that he was. The court also finds that Webb and Bradley ultimately agreed that Webb would buy the painting for $2,800 and that Bradley would be allowed to buy the condominium, at Webb's death or disability, for $67,000.

An option exercisable at the death of the optionor is valid and enforceable. *See, e.g., Dominick v. Vassar*, 235 Va. 295, 367 S.E.2d 487 (1988) (stock option purchase agreement under which stockholders of corporation agreed that upon the death of a stockholder, survivor would have option of purchasing decedent's stock); *Layne v. Henderson*, 232 Va. 332, 351 S.E.2d 18 (1986) (contract between three tenants in common providing that upon the death of one, the other(s) had option to purchase share of decedent(s)). As noted in *Corpus Juris Secundum*:

> If not prescribed by statute, a formal contract is not necessary to bind one in the disposition of his property on his death. Although usually put in the form of an agreement to bequeath by will, that is not essential, it being sufficient that there is an agreement to leave the property or that the promisee shall have it at the death of the promisor; the fact that the mode whereby the disposition is to be effected is not specified does not impair the validity of the agreement . . . . The agreement need not be executed in the form required in the execution of testamentary instruments, and it is not essential that the instrument expressing the promise contain any statement or recital of the consideration. The invalidity of the agreement as a will does not prevent enforcement of its contractual provisions. 94 C.J.S., *Wills*, § 111 (1956) (footnotes omitted).

Notwithstanding the above, the executors are concerned that because this particular option involves the sale of real estate, it violates the statute of frauds. The statute, Va. Code § 11-2, provides in the part pertinent to this case as follows:

> Unless a promise, contract, agreement, representation, assurance, or ratification, or some memorandum or note thereof, is in writing and signed by the party to be charged or his agent, no action shall be brought in any of the following cases . . . .
> 6. Upon any contract for the sale of real estate . . . .

The writing required by the statute does not have to be a formal, written contract. In fact, since the very purpose of the statute is to require written proof of *oral* contracts, it must be presumed in each case that the contract at issue is *not* in writing. Otherwise, the statute would not even have to be considered. In addition, and contrary to the executors' suggestion, the writing does not have to contain any indication of the consideration given for the sale or the terms and conditions of payment. Not only is such suggestion refuted by the case law (*see Corpus Juris Secundum, supra*), the statute itself specifically provides that "[t]he consideration need not be set forth or expressed in the writing, and it may be proved (where a consideration is necessary) by other evidence." As for payment, "[i]n the absence of agreement regarding deferred purchase money, it is presumed that a contract of sale contemplates payment in cash." *Drake v. Livesay*, 231 Va. 117, 120, 341 S.E.2d 186 (1986). If the writing contains "the names of the parties, the terms and conditions of the contract, and a description of the property sufficient to render it capable of identification," the statute of frauds is satisfied. *Reynolds v. Dixon*, 187 Va. 101, 108, 46 S.E.2d 6 (1948). *See also Janus v. Sproul*, 250 Va. 90, 91, 458 S.E.2d 300 (1995) ("To satisfy the Statute of Frauds, a writing must contain the *essential* terms of the agreement it memorializes.") (Emphasis added.) At least one of the writings in this case easily meets those requirements.

In his July 15, 1999, letter to NationsBank and Day, Webb said he was granting to Bradley (names of the parties), for $67,000 at Webb's death or disability (essential terms and conditions of sale), title to Club Studio 16 at the Oceans, Virginia Beach, Virginia, second floor oceanfront (description of the property). That letter satisfies the written memorandum or note requirement of the statute of frauds. The court further holds that when Webb's three July 15 letters are read together, the statute of frauds is also satisfied. *See Rahm v. Klerner*, 99 Va. 10, 14, 37 S.E. 292 (1900) ("Where there is more than one signed paper, so many of them as of themselves show their relation to the contract sued upon may be taken together to make the memorandum.").

Based on the above, the court finds that there was an oral contract between Webb and Bradley under which Webb was allowed to purchase the painting of a naval officer from Bradley for $2,800 in exchange for Bradley's being allowed to purchase the Virginia Beach condominium at Webb's disability or death for $67,000. The court further finds that Webb's July 15 letter to NationsBank and Day, standing alone, and Webb's three July 15 letters, read together, are sufficient written memoranda of the oral contract to satisfy the statute of frauds, thereby making the oral contract valid and enforceable. Accordingly, Bradley has the right to purchase the subject

condominium from Clinton Webb's estate for a cash payment of $67,000, such payment to be made within a reasonable time. The court will not authorize payment of expenses and fees to the executors at this time, the court preferring that such request be made in the first instance to the commissioner of accounts in the normal course.