COURT OF APPEALS OF VIRGINIA


Present:  Judges Frank, Felton and Kelsey
Argued at Richmond, Virginia


CRISTIE A. BINHAMMER
                                    MEMORANDUM OPINION* BY
v.    Record No. 1907-01-2          JUDGE WALTER S. FELTON, JR.
                                         FEBRUARY 11, 2003
DANIEL W. REILLY


           FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
                   Herbert C. Gill, Jr., Judge

           Paul T. Buckwalter, II, for appellant.

           Jennifer E. Crossland (William H. Parcell,
           III; Parcell, Webb & Wallerstein, P.C., on
           briefs), for appellee.


     Cristie Binhammer ("Binhammer") appeals from a final order of

partition of the marital home dated June 8, 2001.  She contends on

appeal that the trial court erred (1) in voiding as a mutual

mistake of facts, the property clause, paragraph (D)(16), in the

property settlement agreement; (2) in failing to estop Daniel

Reilly ("Daniel") from claiming a higher value for his interest in

the family home, after acquiring his father's interest; and (3) in

rewriting the terms of the property settlement agreement and

increasing the value of Daniel's interest in the family home.  For

the following reasons, we affirm the judgment of the trial court.

_____

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

## I.   BACKGROUND

On June 14, 1980, Cristie Binhammer and Daniel Reilly were married.  In June 1987, with the substantial financial assistance of Daniel's father, William Reilly ("William"), the couple purchased a house.  William provided the couple with approximately $10,000 as a down payment on the real estate and for closing costs.  He was an applicant with Binhammer and Daniel for the purchase money loan for the property.

Binhammer and Daniel dispute whether the $10,000 was a loan or a gift.  Binhammer claims the money was a gift.  Daniel contends the money was a loan and that his father informed the couple that they did not have to pay interest to him on the $10,000 he provided.  However, Daniel further contends that if the house was sold, his father expected to be repaid.  In addition, the parties agreed that in return for the down payment, William would be permitted to claim the value of mortgage interest payments as a deduction on his tax returns. He filed for the deduction on his tax returns each year until 1996, even though Daniel and Binhammer separated in 1991 and divorced in 1993.  In 1996, Binhammer refused to provide William Reilly with the necessary documentation to claim the interest deduction.

On June 12, 1987, the house was conveyed by deed to Binhammer, Daniel, and William.  The deed conveyed the property as follows:

-

This deed made this 12th day of June, 1987, by and between Richard G. Zyne and Paula C. Zyne, husband and wife, herein called "Grantor" and Daniel W. Reilly and Cristie A. Reilly, husband and wife, and William C. Reilly, herein called "Grantee":

Witness that for and in consideration of the sum of Ten Dollars ($10.00) and other valuable consideration . . . the said Grantors do hereby grant and convey with General Warranty and English Covenants of Title to the said Daniel W. Reilly and Cristie A. Reilly, his wife, a two thirds undivided interest as tenants by the entirety with the right of survivorship as at common law in and to the below described real property and to William C. Reilly, married, a one third undivided interest as his sole separate equitable estate to be held, owned, and disposed of as hereinafter set forth in and to the below described real property; the said Daniel W. Reilly and Cristie A. Reilly, his wife, and William C. Reilly, married, to hold title as joint tenants with the right of survivorship as at common law . . . .

(Emphasis added.)

On June 16, 1991, Binhammer and Daniel separated. On March 22, 1993, they entered into a property settlement agreement that purported to address, among other things, their respective interests in the home. The property settlement agreement states in relevant part:

D. REAL ESTATE

16. MARITAL RESIDENCE. The parties agree that Husband's share of the equity in the home shall be fixed at $2,000.00 and shall be paid by Wife to Husband upon the earlier of (a) the sale of the home or (b) remarriage of the Wife.

-

Husband hereby relinquishes all right, title and interest in the home other than that designated herein. Wife shall be responsible for all maintenance.

This agreement is based upon the following assumptions:

(1) Husband's father has no financial claim against the home.

(2) Wife is free to sell the home at her sole discretion.

(3) Husband may not use this figure to offset other obligations.

(Emphasis added.)

William was not a party to the property settlement agreement and was not consulted by Binhammer or her attorney, who prepared the document, prior to the execution of the agreement. The agreement was affirmed, ratified, and incorporated into the final decree of divorce on May 4, 1993. On August 1, 1996, William Reilly executed a will leaving his interest in the home to his son. The will states in pertinent part:

I devise all of my right, title and interest in and to certain lot(s) and home located at 8245 Greenock Drive, Richmond, VA 23235, to my son, Daniel W. Reilly, in fee simple. Any indebtedness on said property will be assumed by Daniel W. Reilly and not paid from my estate.

In 1997, on a date not specified in the record, Binhammer remarried. Subsequent to the marriage, however, she failed to pay Daniel the $2,000 for his share of the equity in the home, as required by the property settlement agreement. Also in 1997,

-

Binhammer filed an application to obtain a loan for the home. In order to obtain the loan, she mailed a deed to Daniel and William asking for the transfer of their respective interests in the home to her so that she would be the sole owner of the property. Neither signed the deed because of the final illness of William. The loan fell through.

Shortly thereafter, William Reilly died. Relying on the provisions of his father's will, Daniel asserted ownership to his father's one-third interest in the home. Relying on the property settlement agreement, Binhammer initiated a suit for specific performance to obtain, for $2,000, the original one-third interest held by Daniel as well as the one-third interest that passed to him through William's will.

On November 2, 2000, following a number of hearings, the trial court held that the disposition of the marital residence was based on certain assumptions, assumptions that "were not accurate and constitute a mutual mistake of fact. The first assumption was that 'husband's father has no financial claim against the home.' The evidence is clear that the husband's father had a legal interest in the home and, therefore, had a financial claim against the home." As a result, the court severed paragraph (D)(16) from the property settlement agreement relating to the sale of the marital property and held the real estate was subject to partition. Based on the language of the 1987 deed conveying the property and the transfer of William's

-

interest at his death, the trial court ruled that Daniel owned a two-thirds undivided interest in the property and that Binhammer owned a one-third undivided interest.

On March 7, 2001, an ore tenus hearing was held. The trial court reiterated its finding that Daniel owned a two-thirds undivided interest and that Binhammer owned a one-third undivided interest in the property. It set the equity property value at $33,441.15 and permitted either party to purchase the share of the other party. On June 8, 2001, the trial court entered a final order of partition. Daniel was ordered to convey his two-thirds interest in the property to Binhammer in return for payment in the sum of $22,291.87. Binhammer subsequently paid Daniel for his two-thirds undivided interest and Daniel conveyed to Binhammer by deed, his undivided interests in the subject property.

## II. ANALYSIS

"Under familiar principles we view [the] evidence and all reasonable inferences in the light most favorable to the prevailing party below. Where, as here, the court hears the evidence ore tenus, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Pommerenke v. Pommerenke, 7 Va. App. 241, 244, 372 S.E.2d 630, 631 (1988) (quoting Martin v. Pittsylvania Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986)).

-

This matter has been subject to a long and tortuous journey, including several prior show cause orders issued by this Court resulting from Binhammer's failure to adhere to our rules for filing an appeal.  The sole issue before us is whether the trial court correctly determined the value of the parties' respective interests in the marital home.  The dispute arises out of paragraph (D)(16) of the property settlement agreement relating to the disposition of the marital home.

During oral arguments on November 14, 2002, the question was raised as to whether we had jurisdiction to hear the appeal from the final order of partition, a proceeding in equity.  The parties were asked to brief this additional question.  Having reviewed the briefs filed by counsel and considered the matter, we conclude that we have jurisdiction pursuant to Code §§ 17.1-405(3)(f) and 8.01-670(A)(1)(a).

## A.  MUTUAL MISTAKE

We first consider whether the trial court erred in voiding as mutual mistake of facts, paragraph (D)(16) of the property settlement agreement.  We find that it did not.

> Generally, "[i]f certain facts are assumed by both parties as the basis of the contract, and it subsequently appears that such facts did not exist, the contract is inoperative."  Virginia Iron, Coal, & Coke Co. v. Graham, 124 Va. 692, 708, 98 S.E. 659, 664 (1919).

> The mistake may be common to both parties to a transaction, and may consist either in the expression of their agreement, or in some

-

> matter inducing or influencing the
> agreement, or in some matter to which the
> agreement is to be applied.  Nothing is more
> clear in equity than the doctrine that a
> contract founded in mutual mistake of the
> facts constituting the very basis or essence
> of it will avoid it.

Jennings v. Jennings, 12 Va. App. 1187, 1192, 409 S.E.2d 8, 12 (1991).

We agree with the trial court that paragraph (D)(16) of the property settlement agreement was void because it was based on the mutual mistake of facts assumed by the parties.  The 1987 deed to the marital house clearly provides William Reilly with a one-third undivided interest.  His name appears on the purchase money loan documents.  Additionally, he provided the parties with a substantial down payment on the purchase price of the house and paid the closing costs.  Despite the glaring evidence of William's interest in the house, Binhammer's attorney prepared the property settlement agreement without contacting William as to his claims against the property and without seeking to make him a party to the agreement.  As drafted and executed, the property settlement agreement assumed that William had no financial claim against the home and that Binhammer was "free to sell the home at her sole discretion."  Both assumptions were impossible to complete without affirmative acts by William.  The evidence clearly shows that William had an interest in the house and because of that interest, Binhammer was unable to sell it at her sole discretion.  Since the

-

property settlement agreement was based on assumed facts that did not exist, the trial court did not err in voiding and severing paragraph (D)(16) on the grounds of mutual mistake of facts.

## B. EQUITABLE ESTOPPEL

Having determined that the trial court did not err in voiding paragraph (D)(16) in the property settlement agreement because of mutual mistake of facts, we next consider whether the trial court erred in failing to estop Daniel from claiming a greater value for his interest in the family home than that recited in paragraph (D)(16), particularly the claim of his father's interest in the property acquired at his father's death. The doctrine of equitable estoppel provides that a "party is prevented by his own acts from claiming a right to [the] detriment of [the] other party who was entitled to rely on such conduct and has acted accordingly." Blacks Law Dictionary 551 (6th ed. 1990).

> The elements necessary to establish
> equitable estoppel are (1) a representation,
> (2) reliance, (3) change of position, and
> (4) detriment, and the party who relies upon
> estoppel must prove each element by clear,
> precise, and unequivocal evidence. Dominick
> v. Vassar, 235 Va. 295, 298, 367 S.E.2d 487,
> 489 (1988). Because the doctrine of
> estoppel prevents the showing of the truth,
> it is applied rarely and only from
> necessity.

Princess Anne Hills Civic League, Inc. v. Susan Constant Real Estate Trust, 243 Va. 53, 59, 413 S.E.2d 599, 603 (1992).

-

Binhammer failed to prove the elements of estoppel by clear and unequivocal evidence.

Binhammer asserts that when Daniel signed the property settlement agreement he represented that his father had "no financial claim" against the home, thereby barring his claim to any ownership interest of his father. Contrary to her assertions, the record does not support such a contention. To start, the trial court voided paragraph (D)(16) on which her contention is based. With paragraph (D)(16) voided and severed from the property settlement agreement, we must look to the record for evidence that Daniel had affirmatively represented that his father did not have an ownership interest in the marital home and that Binhammer reasonably relied on that representation. We find no such evidence.

The record before us indicates that Daniel's position has consistently been that his father loaned the parties the money to purchase the house and expected repayment should the house be sold. The record reflects that neither Binhammer nor her attorney contacted William to verify that he "had no financial claim against the property." The record also reflects that Daniel told Binhammer that she should talk with William about any interest he claimed in the property.

It is inconceivable that Binhammer would rely on the assumption that her father-in-law possessed no ownership or financial interest in the marital home when the evidence clearly

and overwhelmingly indicates the contrary. William's ownership interest is reflected in the deed that creates a joint tenancy with the right of survivorship of a one-third undivided interest in the house. Furthermore, he provided a substantial down payment for the property. His name appears on the purchase money loan documents, and he deducted the interest from the house payments, even for several years after they were divorced, in lieu of Daniel and Binhammer making interest payments to him. Neither Binhammer nor her attorney who drafted the property settlement agreement contacted William to determine if the assumptions were correct. Daniel had no authority to relinquish any ownership interest his father possessed in the property or the interests of any other third party without their consent. Any reliance on the assumptions would be per se unreasonable under the facts of this case.

Failing to prove the threshold elements, we need not consider the other factors. We hold that the trial court did not err in finding the evidence insufficient to apply the doctrine of equitable estoppel.

### C. VALUE OF DANIEL REILLY'S INTEREST

Finally we consider whether the trial court erred in determining the value of Daniel's interest in the marital home, at the time of his father's death. In the trial court below, Binhammer requested that the marital home be partitioned and the interests be valued as follows: (1) William's interest to be

-

valued at zero, and (2) Daniel's one-third interest to be valued at $2,000, based on the value set in the property settlement agreement. The trial court refused such a valuation, finding that Daniel and Binhammer based the disposition of the marital home on certain assumptions it found to be mutual mistake of facts. The court severed paragraph (D)(16) of the property settlement agreement and ordered the property to be partitioned. It determined from the evidence before it that Daniel owned a two-thirds undivided interest and Binhammer a one-third undivided interest.

The 1987 deed to the marital home clearly established that from the time the home was purchased until his death, William Reilly possessed a one-third undivided interest. Upon his death, his will provided that any interest he owned in the property would pass to Daniel. There is some question as to whether William's one-third undivided interest passed by devise under his will or passed in equal shares, to Binhammer and Daniel, upon his death, as tenants in common by virtue of the joint survivorship under the grantee clause of the deed.[1] However, the parties failed to preserve or brief that issue for appellate review. Rule 5A:18. The evidence reflects no

---

[1] See Jones v. Conwell, 227 Va. 176, 181, 314 S.E.2d 61, 64 (1984). Code § 20-111 provides that divorce creates a tenancy in common between former spouses who held the property during the marriage as tenants by the entirety with the right of survivorship as at common law.

-

miscarriage of justice or other good cause justifying an exception to the operation of Rule 5A:18.  Binhammer acquired the entirety of Daniel's fee simple interest in the property by deed pursuant to the partition order.

The judgment of the trial court is affirmed.[2]

Affirmed.

---

[2] The Court denies Binhammer's request that she be awarded attorney's fees and costs in this appeal.  Her continued insistence that William Reilly had no financial claim or ownership interest in the property, despite the clear language of the deed of conveyance, his substantial monetary contribution toward the purchase of the home, and his name being on the loan documents, has resulted in unnecessarily protracted litigation.